[Civ. No. 20386. Second Dist., Div. Three. Sept. 28, 1955.]

SALLY E. BROWN et al., Respondents, v. LOS ANGELES TRANSIT LINES (a Corporation) et al., Appellants.

Henry R. Thomas, Wayne Veatch, Fred C. Quimby, Jr., and Henry F. Walker for Appellants.

Trippet, Newcomer, Yoakum & Thomas, Bauder, Gilbert, Thompson & Kelly and Reginald I. Bauder for Respondents.

WOOD (Parker), J.—Plaintiff Mrs. Brown was a passenger on a streetcar of defendant which collided with another streetcar of defendant at a street intersection. In this action for damages for personal injuries (and for husband's loss of wife's services) resulting from the collision, the defendant admitted liability. Only the question as to amount of damages was submitted to the jury. Defendant appeals from a judgment for $25,000 in favor of plaintiffs. Mrs. Brown will be referred to as the plaintiff.

Appellant contends that the court erred prejudicially in permitting plaintiff's witness, a physician who was testifying as an expert neurologist, to testify on direct and redirect examination regarding statements in medical textbooks.

The collision occurred in January, 1952. Plaintiff was 64 years of age. She did not have any recollection of the occurrence of the accident, except that she heard the crash. The next thing she remembered was that she was in a hospital.

After the collision plaintiff was taken to the receiving hospital and then, upon instructions from her physician Dr. Williams, she was taken to another hospital where Dr. Williams examined her. He found that she had tenderness and edema (swelling) of the posterior scalp, had some stiffness of her neck, had muscle spasms on both sides of her neck, and

that she was in a highly nervous state. She was in the hospital about three days. During that time Dr. Williams made a diagnosis that she had a concussion of the brain; and that she had traumatic shock. When she returned home her face was very much swollen. She was confined to her bed at home about three weeks. At the end of three weeks she could not get out of bed without help. A nurse took care of her about three months during the daytime. About two weeks after the accident a tremor or violent shaking started or was manifested in her head and right arm. The tremor or shaking continued thereafter and was continuing at the time of trial. (The trial commenced on November 30, 1953.)

At the trial, plaintiff contended that the tremor was a manifestation of Parkinson's disease (or shaking palsy); and that such disease was caused by the collision. According to the evidence, such disease is not curable and it gets progressively worse. At the trial, defendant contended that the tremor was not Parkinson's disease but that plaintiff's condition was due to hysteria or some emotional disturbance, and that the shaking would stop when she is relieved of the tensions that are operating on her; and that if it be assumed that a lawsuit is the cause of the emotional disturbance she would recover when the suit is terminated. Defendant stated that it did not contend that plaintiff was malingering. There was testimony, on behalf of plaintiff, that the tremor could not be feigned, because a person, who would try to feign it, would be so tired after the first few minutes that he would have to quit. At the trial, a factual question was whether Parkinson's disease could be caused by trauma. There was testimony on behalf of plaintiff that the disease could be caused by trauma, and there was testimony on behalf of the defendant to the contrary.

Dr. Gordy, an expert neurologist called as a witness by plaintiff, testified that she examined plaintiff in September, 1953, that the tremor is characteristic of Parkinson's tremor; that the examination showed other characteristics of Parkinson's syndrome or disease such as a rigidity of muscles and a stooped posture, difficulty in getting up suddenly and maintaining balance; the tremor appeared in a rather violent form instead of a slow imperceptible type of condition; in Dr. Gordy's opinion the trauma or injury in the streetcar accident precipitated Parkinson's syndrome; and that there is a definite causal relationship between the accident and the tremor of plaintiff's hand and head.

Dr. Bercel, a physician called as a witness by plaintiff, testified that he specializies in neurology and psychiatry; he had had many cases of Parkinson's disease; he did not give plaintiff a neurological examination; in October, 1953, he gave plaintiff an electromyogram test; the purpose of the test is to determine the nature of the tremor; in his opinion, which is based only upon his interpretation of the graph made in that test, plaintiff's tremor is characteristic of Parkinson's tremor.

Dr. Williams, a physician called as a witness by plaintiff, testified that he is a general medical practitioner; plaintiff was his patient prior to the accident; in 1949 he treated her for hypertension; he examined her at the hospital after the accident (as above stated); after the accident he treated her 66 times; when he observed the tremor about two weeks after the accident he recommended that she consult a neurologist, and he also made that recommendation in April, 1952; in his opinion, plaintiff's tremor was typical of Parkinson's syndrome.

Dr. Adelstein, an expert neurologist called as a witness by plaintiff, testified that he examined plaintiff in September, 1952; in his opinion, the trigger mechanism or the precipitating factor "of these symptoms, particularly the shaking and the tremor, was the concussion or the head injury that she sustained at the time of her accident." Then the witness was asked, on direct examination, if dozens of books on neurology had been written. Defendant objected to the question on the ground that it was incompetent, irrelevant and immaterial. The objection was overruled. The witness answered that many standard textbooks on neurology had been written. Counsel for plaintiff stated "And I take it that you and other neurologists acquire your knowledge by the simple method among others of reading these books that have been written by neurologists?" The witness answered, "That is correct." Then the proceedings were as follows: "Q. [By counsel for plaintiff.] And have you done research, Doctor, on the question of whether or not Parkinson's syndrome is sometimes precipitated by trauma or a blow to the head? MR. THOMAS [counsel for defendant]: That is objected to as being incompetent, irrelevant, immaterial, and calling for hearsay. It doesn't give the opponent any chance to cross-examine. It is improper direct examination. MR. BAUDER [counsel for plaintiff]: I submit, your Honor, it goes into his qualifications. If he is basing his knowledge on text-

books on neurology that he has read and acquired knowledge of the subject from the textbooks, certainly that is entitled to the jury's consideration. THE COURT: Objection is overruled. THE WITNESS: Yes. I have read a number of standard orthodox texts and other literature, medical literature, over a period of some years with reference not only to Perkinson's disease or this type of shaking palsy, but also with reference to the cause of it; also with reference to the relationship which may exist and does exist between injury or trauma and the trigger mechanism which seems at times to bring on a condition like this. Q. BY MR. BAUDER: And have you based your opinion that this was precipitated by the streetcar accident in part on which you have read in these texts? MR. THOMAS: That is objected to on the same grounds. THE COURT: Objection is overruled. MR. THOMAS: Any reference to any textbook on direct examination is improper. It doesn't make any difference whether this expert based it on that or what he based it on. I object to the question. MR. BAUDER: I think the jury is entitled to know exactly what he bases his opinion on. THE COURT: Objection is overruled. BY MR. BAUDER: Go ahead, Doctor. A. It is based not only on the reading that I have done on this subject but also it is based upon my experience during the past 28 years with patients who have had this condition, patients in my own private practice. Q. That is what I was going to ask you. Have you seen in the course of your practice as a neurologist cases where your treatment and observation of the patient showed that a Parkinson's syndrome followed a head injury? A. Yes, sir, I have.''

On cross-examination, counsel for defendant asked if the witness was familiar with the work of Dr. Livingston Hunt, a famous professor of neurology at Columbia University, and if Dr. Hunt was not considered the outstanding authority in the United States on tremors. The witness replied that he did not know him. Counsel for defendant asked the witness if it was not a fact that Sir Stewart, the English authority on tremors, was considered the outstanding authority in the world on tremors. The witness replied that he did not place him.

Also on cross-examination, counsel for defendant asked if the witness was familiar with the works of Dr. Brain of the University of Chicago. He replied in the affirmative. Counsel for defendant then asked: ''Q. He states positively that Parkinson's does not result from trauma, doesn't he, Doctor?

A. That is his opinion, sir.'' Counsel for defendant also asked: ''And Dr. Brain does categorically take the position that trauma cannot cause Parkinson's, doesn't he, Doctor? A. Well, just as categorically as I state that it can.'' Counsel for defendant referred again to his original question regarding Dr. Hunt, and asked the witness if Dr. Hunt was an authority on tremors. The witness answered, ''If you will bring his book here I will try to identify him.'' Then the proceedings were as follows: ''Well, you have got the book up there, Doctor, and I don't want to foreclose you from telling me about it. What is the name of the book that you have been referring to? A. The name of this book is entitled Trauma and Disease by two authors named Brandy and Kahn.'' Thereupon, counsel for defendant said: ''I'd like to keep it [book]. I will return it to you at the conclusion of the case.'' Dr. Adelstein also testified on cross-examination that in his experience in seeing or treating more than 10,000 Parkinson disease cases there was one case which was caused by an accident. That was the case of a 19-year-old boy.

On redirect examination of Dr. Adelstein, counsel for plaintiff said there is another textbook entitled Correlative Neuroanatomy, and he asked the witness if that book did not list ''trauma following brain concussion'' as being among the causes of Parkinson's syndrome. Defendant objected thereto on the ground that it was not proper redirect examination and that ''it doesn't pretend to be a textbook treatise on it.'' Then counsel for plaintiff asked if the book was a textbook on neurology. The witness replied in the affirmative. There was no ruling upon the objection to the previous question, and there was no answer to that question. Counsel for plaintiff asked the witness if the book by Brandy and Kahn (referred to on cross-examination), at a certain place therein, dealt with the connection between trauma and Parkinson's syndrome. The witness replied that it did. Then there were questions and answers as follows: ''Q. And does it tell you that it happens? A. It says that it not only happens but it has been noted a number of times. Q. Are you familiar with the textbook of Clinical Neurology that was written by Dr. Neilson, a California Neurologist here?'' Counsel for defendant objected to the question on the ground that it was not proper redirect examination. The objection was overruled. Then counsel for plaintiff asked another question, and the previous question was not answered. The second

question was whether the witness had called the attention of counsel for plaintiff to some of the texts that he (counsel) had referred to regarding "the question of the traumatic origin of this situation." The witness replied in the affirmative. Then there were proceedings as follows: "THE COURT: Are you relying on those texts, Doctor, in conjunction with your own experience in your opinion in this case? THE WITNESS: Yes, sir, I am. MR. THOMAS: Let us file them, please sir, and I will return them to the doctor, the ones he is relying on. That will give me some chance to read them myself. Q. BY MR. BAUDER: The American Medical Journal is customarily read by all doctors, whether they are neurologists or anybody else, to keep current on events; isn't that true? A. It's a very widely read magazine. Q. And the portions to which I referred—and for the record I am referring to page 1229, this language here: 'Parkinson's syndrome developed in a patient about two months after he had a moderately severe concussion. Neilson in his book on Clinical Neurology states that there is an increasing belief that trauma——.'" Counsel for defendant objected thereto on the ground that it was not proper redirect examination. The objection was overruled.

On recross-examination, counsel for defendant read certain statements from the book of Dr. Neilson and asked the witness if he agreed with the statements. The answers of the witness were to the effect that he agreed with some of them and disagreed with others. Counsel for defendant also read certain statements from the Stanford Press book (which had been referred to by counsel for plaintiff as Correlative Neuroanatomy) and asked the witness if he agreed with the statements. He replied to the effect that he agreed with some of them and disagreed with others.

Dr. Doyle, a neurologist called as a witness by defendant, testified that he examined plaintiff in May, 1952; she had moderately high blood pressure; as a result of the accident she sustained a mild concussion of the brain and contusions of the scalp, chest, and lower part of the spine; in his opinion plaintiff's condition is not necessarily due to the accident, she is not suffering from Parkinson's disease, and Parkinson's disease cannot be caused by trauma.

Dr. Dickerson, a neurosurgeon called as a witness by defendant, testified in answer to a proper hypothetical question that in his opinion there was no organic injury to plaintiff's

brain, she is not suffering from Parkinson's disease, and Parkinson's disease is not caused by trauma.

█ Appellant argues that it was error to permit Dr. Adelstein, on direct examination, to testify regarding opinions in medical textbooks. As shown above, Dr. Adelstein testified on direct examination that in his opinion the precipitating factor of the tremor was the trauma. He also testified on direct examination, in response to questions, that many textbooks on neurology had been written, he and other neurologists acquire knowledge by reading the books, and that he based his opinion (that plaintiff's condition was precipitated by the accident) upon the reading he had done and upon his experience during 28 years. In that testimony no textbook or other medical literature was mentioned by name and there was no statement as to the contents of any book or literature. That testimony did not constitute error. In *Healy* v. *Visalia & T. R. Co.*, 101 Cal. 585, it was said (p. 592 [36 P. 125]) with reference to testimony of a physician: "As an expert it was competent for him to give the grounds upon which he based his opinion, as well as the opinion itself, and the fact that his opinion was based upon information derived from his reading did not make it incompetent for him to so state. He was not asked to state, nor did he state, what the 'cases on record' were, nor whether the facts of those cases corresponded with the facts of the case on trial, and the contents or statements of the medical books were not given to the jury." (See also *Forrest* v. *Fink*, 71 Cal.App. 34, 40-41 [234 P. 860].)

Also on direct examination, Dr. Adelstein was asked if he had done research on the question as to whether Parkinson's syndrome is precipitated by trauma. He responded directly to that question by saying, "Yes." Then he volunteered a statement that he had read texts and other medical literature over a period of years with reference to the cause of Parkinson's disease, and also with reference to the relationship which may exist and "does exist" between trauma and the trigger mechanism which seems to bring on a condition like this. █ Testimony regarding statements in medical books is not admissible on direct examination. (*Baily* v. *Kreutzmann*, 141 Cal. 519, 522 [75 P. 104].) Appellant's assertion that Dr. Adelstein testified on direct examination regarding opinions in textbooks is based principally upon his use of the words "does exist" when testifying that he had read texts with reference to the relationship that may exist and

"does exist" between trauma and the trigger mechanism which seems to bring on the condition. Dr. Adelstein had theretofore testified that in his opinion the trigger mechanism or precipitating factor of plaintiff's tremor was the injury she sustained. ■ In interpreting his testimony, a question could reasonably arise as to whether he was stating that he had read that a relationship does exist between trauma and the disease, or whether he was stating that he had read about the relationship between trauma and the condition, and that in his opinion a relationship between them does exist. Even though there is an implication that he was stating he had read that such a relationship does exist, it would not necessarily follow that it constituted prejudicial error. That testimony was volunteered, and it cannot be said that counsel for plaintiff, in asking if the witness had done research on the question, should have anticipated that he would include in his answer a statement as to what he had read. Since appellant's attorneys did not make a motion to strike out that testimony, it might well be that they did not consider at that time that the witness was stating what he had read. In view of the prior testimony of Dr. Adelstein that in his opinion the tremor was caused by the trauma, and in view of the uncertainty of meaning with respect to his subsequent testimony which included the words "does exist," it cannot be said that his volunteered testimony wherein he used those words constituted prejudicial error.

Appellant also argues that it was error to permit Dr. Adelstein to testify on redirect examination regarding opinions in medical books that had not been previously mentioned. Respondent (plaintiff) states in reply to that argument that since Dr. Adelstein was asked on cross-examination with respect to specific medical books and their contents, and since the answers to those questions challenged the testimony of Dr. Adelstein that he based his opinion in part on medical literature, he had a right on redirect examination to show that there were medical authorities which supported his opinion.

Although Dr. Adelstein on direct examination had not mentioned the names of any books or authors upon which he relied or mentioned the name of any book or author at all, counsel for appellant asked specifically, on cross-examination, regarding certain named books and authors. He asked if the witness was familiar with the work of Dr. Hunt, a famous professor of neurology, and if it was not a fact that Sir

Stewart, the English authority on tremors, was considered the outstanding authority in the world on tremors. The witness replied that he did not know them. Then the witness was asked if he was familiar with the works of Dr. Brain. After the witness replied in the affirmative, he was asked if Dr. Brain did not state positively that Parkinson's disease does not result from trauma? The witness replied, "That is his opinion, sir." Counsel for plaintiff stated that he objected to the question, and that if the author was quoted the book should be produced. He did not object upon the ground that it was improper cross-examination, or object upon any ground, but he called for the production of the book. Apparently, Dr. Adelstein had a book with him while he was testifying. Counsel for appellant also asked him the name of "the book that you have been referring to?" The witness replied that the "name of this book" is Trauma and Disease by Brandy and Kahn. Nothing was said on cross-examination regarding the contents of the book.

On redirect examination, counsel for plaintiff referred to three medical publications which had not been referred to on cross-examination. Those publications were Correlative Neuroanatomy (also known as Stanford Press), Clinical Neurology by Dr. Neilson, and the American Medical Journal. He asked the witness if Correlative Neuroanatomy did not list trauma as a cause of Parkinson's syndrome. That question was not answered for the reason, apparently, that counsel for plaintiff interrupted and asked another question. With reference to Clinical Neurology, he asked if the witness was familiar with the book. That question was not answered for the reason, apparently, that counsel for plaintiff interrupted and asked another question. Since the questions as to those two publications were not answered, no prejudice resulted from the questions. With reference to the American Medical Journal, he asked whether it was read by doctors. After the witness replied in the affirmative, counsel for plaintiff read a portion of the Journal as follows: "Parkinson's syndrome developed in a patient about two months after he had had a moderately severe concussion. Neilson in his book on Clinical Neurology states that there is an increasing belief that trauma——." Then counsel for appellant interrupted the reading and objected on the ground that it was not proper cross-examination. The objection was overruled, but the reading was not completed. It is to be noted, however, that the portion which was read was not a statement

that the syndrome was caused by the concussion. Also on redirect examination, counsel for plaintiff asked if the Brandy and Kahn book (which had been referred to on cross-examination, and filed at the request of appellant) dealt with the connection between trauma and Parkinson's syndrome. After the witness replied that it did, counsel asked if the book tells that "it happens." The witness replied that it says it not only happens but it has been noted a number of times.

The argument with respect to the propriety of the cross-examination and the redirect examination may be summarized as follows. Defendant contends that when an expert witness has testified that he based his opinion upon textbooks or other works on the subject, he may be cross-examined with respect to statements contradictory of his opinion found in any textbook or works which the witness admits having read, but that upon redirect examination it is improper to question the witness with respect to statements in any other textbooks or works on the subject. Plaintiff does not question the right of defendant on cross-examination to question a witness with respect to such writings on the subject but contends that if such writings are used on cross-examination, the door is opened for like reference to any and all textbooks and writings on the subject with which the witness has shown himself to be familiar. We deem it unnecessary to decide these questions inasmuch as we are satisfied that if there was error as contended by defendant, it was not prejudicial. In other words, if we should conclude that error was committed, we would nevertheless be required to affirm the judgment. In this situation we deem it inappropriate to decide the questions of error when it is unnecessary to do so in order to arrive at a just determination of the cause.

Irrespective of the alleged errors on cross-examination and redirect examination with respect to the medical books, there was proper testimony of expert witnesses on each side with reference to the relationship between trauma and Parkinson's disease. Such proper testimony was ample to have warranted the jury in finding that Parkinson's syndrome can or cannot result from trauma. Dr. Adelstein testified that in his opinion the precipitating factor of the tremor was the trauma. Dr. Gordy, a witness called by plaintiff, testified that in her opinion the trauma precipitated Parkinson's syndrome, and there is a definite causal relationship between the accident and the tremor. No reference to medical litera-

ture was involved in her testimony. Likewise, there was no reference to medical literature in the testimony of Dr. Bercel or Dr. Williams, witnesses called by plaintiff. Dr. Bercel's opinion, which was based upon the graph he made, was that the tremor is characteristic of Parkinson's tremor. Dr. Williams' opinion was that the tremor was typical of Parkinson's syndrome. Dr. Doyle, a witness called by defendant, testified that Parkinson's disease cannot be caused by trauma. Dr. Dickerson, called by defendant, testified that said disease is not caused by trauma. In view of such testimony as to opinions of witnesses who were present in court, and in view of all the circumstances of this case, it cannot be said that the fragmentary references to books on redirect examination, if erroneous, constituted prejudicial error.

Appellant also asserts that the amount awarded as damages is excessive. The question as to the amount of damages was a question of fact for the jury. The evidence was sufficient to support the award.

No other grounds of appeal are urged by appellant.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 23, 1955.