[Civ. No. 17583.   First Dist., Div. One.   Mar. 12, 1958.]

EDNA MAE HENDERSHOTT, Appellant, v. MACY'S
et al., Respondents.

Lenz, Jarvis, Miller & Decker for Appellant.

Bronson, Bronson & McKinnon and Edward A. Morris for Respondents.

BRAY, J.—Plaintiff appeals from a judgment in favor of defendants after jury verdict and attempts to appeal from an order denying new trial.*

### Questions Presented

1. Refusal of certain instructions, particularly on res ipsa loquitur.
2. Admission of evidence of experiment.

### Evidence

Plaintiff with her husband purchased some dishes on the fifth floor of Macy's San Francisco store. Four cups, four saucers and four dinner plates were packed in a box and plaintiff proceeded to take the down escalator, carrying the

---

*In spite of the fact that appellate courts for many years have been announcing that an order denying a new trial is not appealable as the order is reviewable upon the appeal from the judgment, we continue to get purported appeals from such orders in a large percentage of cases.

box in her right hand. In her left hand she had a small soft package of "towels and things" and a purse over her left arm. Almost immediately after stepping on the escalator "We came to something that automatically stopped me from the right side. The box wedged on something which hit my hip and threw me back, and I ground my left heel into the treads of the step that was there and I hit my back on the second step back." By the time she reached the fourth floor she had regained her feet. She claims to have received serious permanent injury from the fall. On the side panel of the right side of the escalator there are metal strips. These strips are perpendicular to the treads of the escalator and are about 1½ inches wide. They are either ⅛ inch thick as testified to by plaintiff's witnesses or 3/32 inch as testified to by defendants' escalator mechanic. The latter testified that the function of the strips is to bind together the various sections of the plywood veneer panel and to hold them in place. A structural engineer called by plaintiff who had examined the escalator and who testified that he was not familiar with escalators but was familiar with the various ways of joining panels, stated that the strips were merely for appearance. Plaintiff testified that the escalator itself was working properly, did not jerk or cause her to fall. It was her testimony and that of her husband that a corner of the box which she had been holding some 3 to 5 inches away from the panel struck one of the panel strips, causing the box to wedge against her hip. As the tread upon which she was standing was proceeding forward, the box pushed her backward, causing her to fall. Defendants' evidence was that the strip with its slight protrusion beyond the wall of the panel could not cause a box to catch on it. However, their mechanic testified that when he held a box against the strip the box did not catch but caused only a "gentle nudge." There is a conflict in the evidence as to whether the strip is necessary and as to whether other types of panels than the plywood might be better. There is no evidence that in using the escalator plaintiff held on to or intended to hold on to the rails.

1. *Instructions.* (a) Res Ipsa Loquitur.

The court refused to instruct on this subject. It was plaintiff's theory that under the evidence the accident could have been caused in either one of two ways, one, due to improper construction, that is, that the strip projected ⅛th inch above the panel. Under this theory, res ipsa loquitur

would not apply as plaintiff knew as much about the cause of the accident as did defendants. Both plaintiff and her husband testified that the accident was caused by the projecting strip. As said in *Billeter* v. *Rhodes & Jamieson, Ltd.*, 104 Cal.App.2d 137, 147 [231 P.2d 93]: "The doctrine is not applicable to the facts here involved because all the parties knew the facts relating to the injury. They all knew not only how the appellant was injured, but why he was injured—there was insufficient clearance between the fin and the cross brace. Under such circumstances the doctrine should not be applied.

"The California authorities on this subject are by no means consistent and clear. It is possible to find authority in this state for many different statements of the elements of the doctrine. (See cases collected and commented upon in *Leet* v. *Union Pac. R. R. Co.*, 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008]; see, also, an excellent article on the subject by William L. Prosser entitled '*Res Ipsa Loquitur in California*,' in 37 Cal.L.Rev. 183.)

"Regardless of this apparent conflict, it is perfectly clear that, where the evidence of how and why the accident occurred is equally open and known to all parties, the doctrine has no application. As was stated in *Ybarra* v. *Spangard*, 25 Cal.2d 486, 490 [154 P.2d 687, 162 A.L.R. 1258], quoting from Wigmore on Evidence: 'If the doctrine is to continue to serve a useful purpose, we should not forget that "the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person."' "

Whether the operator of an escalator is held to the duty of utmost care and diligence as is required of a common carrier or only of ordinary care has never been decided in California. There seems to be a split of authority on the subject elsewhere. (See 152 A.L.R. 562.) In *Schwerin* v. *H. C. Capwell Co.*, (1934), 140 Cal.App. 1 [34 P.2d 1050] the court assumed without deciding that the escalator operator was charged with the highest degree of care as of a common carrier. In *Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177, 182 [140 P.2d 467], where the point was not involved, there is an intimation that the operator is required to exercise the highest care toward a person using the escalator as in the case of operators of elevators. It is well settled in this state

that an elevator operator is held to the duty of utmost care and diligence analogous to that required of a common carrier. (See cases cited in 17 Cal.Jur.2d 556.) We see no reason why the same standard of duty should not be required of the operator of an escalator.

If plaintiff's story was believed, namely, that a condition existed which caused the box being carried by plaintiff to wedge, then plaintiff proved negligence and the burden would fall on defendants of showing that the condition was not due to negligence.

The second way in which plaintiff claims that the accident may have happened was that of alleged improper maintenance, namely, that as plaintiff and her husband had no time to examine the strip to see its actual condition, the wedging may have been caused by the strip buckling or being somewhat above its natural position. The condition of the strip would be something within defendants' sole knowledge and would entitle plaintiff to a proper instruction on res ipsa loquitur.

There are three conditions which must appear for the doctrine to apply. ''The doctrine of res ipsa loquitur has three conditions: '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' (Prosser, Torts, p. 295.)'' (*Ybarra* v. *Spangard*, 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258].)

If plaintiff's story is believed all three conditions could have existed here. It should be pointed out that the third condition should not be confused with contributory negligence. It refers to the question of control and means that the doctrine will not apply if the plaintiff had control of the instrumentality. See *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal. 2d 436, 445 [247 P.2d 344]. The doctrine may apply and yet the plaintiff be unable to recover because of contributory negligence.

Plaintiff proposed two instructions upon res ipsa loquitur. The first, plaintiff's Number 13 (BAJI, 4th ed., No. 206-B) was improper in that in effect it instructed that as a matter of law the accident occurred as testified by plaintiff. (Incidentally, this instruction should never be given unless the cause of the accident is established as a matter of law.) The second, plaintiff's Number 12 (BAJI, 4th ed., No. 206) would have required modification as otherwise it would have applied

to the plaintiff's first theory of the accident as to which, as we have shown above, it is not legally applicable.

Even if the instruction were proper, the failure to give it in this case was not prejudicial. A jury, under the evidence, could very well have found that even though, if the box wedged, defendants were unable to overcome a showing of negligence on their part, plaintiff herself, burdened as she was, was negligent in using the escalator instead of the elevator, or in failing to protect herself by holding on to the rails. This is a case in which for the jury to have found for plaintiff they would first have to believe plaintiff's story that the box wedged and not merely struck against the panel or its strip. If they did not believe her story there could be no recovery in any event. If they did believe her story they would necessarily have to find that defendants were negligent in maintaining a strip which protruded even as slight as $\frac{1}{8}$ inch beyond the panel. The negligence charged in the complaint and claimed to have been shown by the evidence was the installation and maintenance of the strip protruding $\frac{1}{8}$ inch beyond the panel and not being flush with it. It was conceded that the strip did so protrude. The court properly instructed the jury that defendants were under a duty of the utmost care and diligence for the safety of persons using the escalator and would be responsible for injury occasioned by even "the slightest neglect which human care and foresight might have guarded against . . ." Thus, it is obvious that if the jury believed that the box was wedged by the protrusion of the strip it would necessarily have found defendants guilty of negligence. It obviously either did not believe plaintiff's story, or, if it did, it also concluded that plaintiff, too, was guilty of negligence.

(b) Other Instructions.

Plaintiff's proposed instruction No. 10 is based on language in *Schance* v. *H. O. Adams Tile Co.*, 131 Cal.App.2d 549 [280 P.2d 851]. Plaintiff's proposed instruction No. 11, based in part upon language in *Crane* v. *Smith*, 23 Cal.2d 288 [144 P.2d 356], is mostly a variation of instruction No. 10. The substance of both instructions was sufficiently covered by the instructions given, one of which is BAJI Number 101-H, which the fourth edition, page 235, states was suggested by the Schance and Crane cases.

Plaintiff cannot complain of BAJI Number 101-H, for under the state of the record it is presumed that she offered it. (See cases cited in 3 Cal.Jur.2d 820, 821.) Moreover, the

transcript shows that during the trial plaintiff's counsel recommended it to the court.

2. *Experiment.*

Defendants' escalator mechanic testified over objection to an experiment made by him in which he took a square, sharp edged box made of cardboard like a shoe box, approximately 18 inches square, and riding the escalator held it against the panel, and found that when it passed the strip in question "it just nudged me a little." "The question of the similarity of conditions and the remoteness of experiments offered is one lying in the discretion of the trial court . . ." (*Miller* v. *Dollar Steamship Lines, Inc.*, 19 Cal.App. 2d 206, 214 [64 P.2d 1163].) We do not find any error in the admission of such evidence here.

The appeal from the order is dismissed. The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.