[Civ. No. 25972. Second Dist., Div. Four. July 25, 1962.]

ANTONE FURTADO, JR., a Minor., etc., et al., Plaintiffs and Respondents, v. MONTEBELLO UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

Moss, Lyon & Dunn, Fulton W. Haight and Henry F. Walker for Defendants and Appellants.

David M. Harney for Plaintiffs and Respondents.

BURKE, P. J.—This is an action for damages for personal injuries sustained by plaintiff minor and for medical expense expended by the plaintiff father of the minor as a proximate result of negligence on the part of defendant schoolteacher Reilly in the course and scope of his employment for defendant school district.

In the action a jury returned a verdict against defendants in favor of plaintiff minor for $60,000 and in favor of the plaintiff father of the minor for $4,500 upon which judgment was entered March 22, 1961. On a motion for new trial the court denied the motion as to plaintiff minor (hereinafter referred to as "plaintiff") and as to plaintiff father (hereinafter referred to as "plaintiff father") conditionally on remission by the latter of the amount in his favor which exceeded $1,945. Plaintiff father remitted the excess of his award within the required time.

Plaintiff was a 15-year-old student at the Eastmont Junior High School in the 1957-58 school year. . Viewed from the point of view most favorable to the plaintiff, the facts of the case reveal, in brief, the following: In September of 1957 he ran barefooted on a track and bruised the sole of his left foot.

He went to the general hospital on December 9 of that year for an examination of his foot. X-rays were negative but he was advised to wear an Ace bandage and to use crutches. On February 20, 1958, he entered White Memorial Hospital where findings were made of weight loss, tenderness over the kidney area, excessive water drinking, undescended testicle and a swollen left foot. On February 21, 1958, an incision was made in the plantar surface of the foot and drainage made. The material removed for pathological examination was found to be nonmalignant. Examinations showed no swelling of any lymph node in the leg, groin or elsewhere. The patient was discharged from the hospital on March 1, 1958. On March 9, 1958, plaintiff was reexamined at the hospital and the findings showed no complaints, no swelling and that the operative wound was healed.

On March 18, 1958, while plaintiff was seated in the front row of a metals class defendant teacher Reilly was manipulating and demonstrating two steel bars. One of them, weighing 6, 7, or 8 pounds, fell from his hands and struck plaintiff on the top of his left foot which was then in an Ace bandage. Plaintiff was wearing on open sandal and using crutches at the time. Two days after the accident plaintiff returned to the hospital complaining of pain and swelling of his left foot. Following an examination, a notation was made of a ''tender node of left inguinal [groin] region.'' There were several incisions and drainages of the foot followed by surgery on April 7, 1958, at which time a tumor was removed from the top of the foot. Pathological study of this tumor revealed it to be a ''synovial sarcoma.'' On April 9 plaintiff's left groin was operated on for removal of a lymph node which was also cancerous. On April 17 plaintiff's left leg was amputated above the knee and further cancerous lymph nodes were removed from the leg and groin area. The cancerous mass of the left foot measured 11 x 7 x 7 centimeters (4.4 x 2.8 x 2.8 inches).

On appeal defendants contend: (1) that the trial court erroneously instructed the jury on the doctrine of res ipsa loquitur; (2) that the court erroneously permitted introduction of case histories during the direct examination of plaintiffs' medical expert witness; and (3) that prejudicial conduct deprived the defendants of a fair and just trial.

On the first point defendants argue that the doctrine of res ipsa loquitur was inapplicable, claiming that the cause of the accident was well known. They maintain that to apply

the doctrine under the facts presented permits, if it does not in fact require, the jury to give double weight to the evidence against defendants, first through presentation of the facts themselves as to how the accident occurred and then through utilizing the inference of negligence under the doctrine. They assert that plaintiffs' evidence reveals exactly and specifically wherein and how plaintiffs claim negligence to have existed. Defendants assert that they were thereby required not only to meet this specific charge of negligence but also by the instruction to the jury to bear the burden of meeting the inference. The court included among its instructions the following:

### "BAJI[1] No. 206-A (Revised)

"One of the questions for you to decide in this case is whether the accident involved occurred under the following circumstances:

"First, that it is the kind of accident which ordinarily does not occur in the absence of someone's negligence;

"Second, that it was caused by an agency or instrumentality in the exclusive control of the defendant; and

"Third, that the accident was not due to any voluntary action or contribution on the part of the plaintiff.

"If, and only in the event that you should find all these conditions to exist, you are instructed as follows." (Given on court's motion.)

Digressing from the reading of the instructions, the court said, "This, by the way, ladies and gentlemen, is the res ipsa loquitur instruction that you have heard about."

The court continued instructing the jury:

### "BAJI[2] No. 206. (Revised)

"From the happening of the accident involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference.

"When there is any evidence to the contrary, you must weigh all of the evidence bearing upon the issue of defendant's negligence. If the evidence tending to prove that the accident

---

[1]Book of Approved Jury Instructions—Civil, Los Angeles Superior Court.

[2]Book of Approved Jury Instructions—Civil, Los Angeles Superior Court.

was caused by a failure of the defendant to exercise the care required of him has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue.

"In order to meet or balance the inference of negligence, the defendant must present evidence to show either (1) a satisfactory explanation of the accident, that is, a definite cause for the accident, in which there is no negligence on the part of the defendant, or (2) such care on the defendant's part as leads to the conclusion that the accident did not happen because of want of care by him, but was due to some other cause, although the exact cause may be unknown. If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you will find against the plaintiff on that issue." (Requested by Plaintiff. Given as Requested.)

A juror then posed a question:

"Juror Fremder: Would you kindly read that paragraph again?

"The Court: I will read the entire, Mrs. Fremder. There [are] the preliminary question[s], so to speak, and then once you determine those, the inference arises, as a matter of law."

The court then reread BAJI[3] 206-A and 206 as aforesaid and said, "Now, those are the group of instructions on the substantive law." Damage instructions next were given.

Defendants assert that this does not concern the type of case such as that of a barrel falling from a building from unknown causes or the unexplained fall of a ladder in a store; that it does not require the inference to arise as a matter of law. (Prosser, Law of Torts (2d ed.) p. 214.)

The Supreme Court has recently ruled on this point in *Di Mare* v. *Cresci*, 58 Cal.2d 292, 299 [23 Cal.Rptr. 772, 373 P.2d 860] as follows:

█ "The introduction of evidence of specific acts of negligence does not deprive the plaintiff of the benefit of the doctrine unless the facts as to the cause of the accident and the care exercised by the defendant are shown as a matter of law thus eliminating any justification for resort to the inference of negligence. [Citations.] █ The doctrine may be invoked whether or not the defendant was in a better position than the plaintiff to explain what occurred so long as it appears more probable than not that the injury resulted from

[3] Book of Approved Jury Instructions—Civil, Los Angeles Superior Court.

the defendant's negligence. [Citations.] If the rules were otherwise, a plaintiff would be penalized for producing all of the evidence he has as to the cause of the accident, and in some cases the trier of fact might be denied evidence useful and relevant to the proper determination of the case.''

In view of this authority we hold the giving of the res ipsa loquitur instruction by the trial court in the instant case was not error.

During the direct examination of Dr. Larner, plaintiffs' medical expert witness, he was asked whether ''. . . these synovial sarcomas are notoriously slow growing; . . .?'' He answered in the affirmative and was then asked, ''Can you tell us, Doctor, some of the case histories on the subject of the rate of growth of the synovial sarcomas?'' The expert witness then stated that he would just mention very quickly two or three as examples as follows: ''There was one woman who had a pain in the elbow area for five years, and incidentally, a month after she was struck by something it began to grow and spread into a mass which was removed shortly later; and was one of these tumors. I am sure again, in hindsight, that she had a little encapsulated one there for five years. I read of a lot of such cases. There was a dancer, 17-year old dancer. . . .''

At this point the defendants objected ''to an academic discussion of other cases that has no direct bearing on this.'' The court inquired if the doctor was referring to some notes and the witness advised that the notes he was referring to were from ''my perusal of the literature. Actually I made an example of two or three cases just as examples that were similar.'' When asked as to the source of this particular material he stated he did not have it with him but had it in his office. The court then advised the jury concerning section 2047 of the Code of Civil Procedure which permits a witness to refresh his recollection from notes written by him, and then further in reference to the testimony of experts, ''. . . in all expert opinions it is the opinion of the expert which we call substantive evidence. But, keep in mind the rule that no opinion—I don't care whose it is—in my humble opinion is any better than the reasons for it. The reasons become admissible not as proof of that set forth in the reasons, because that is not substantive law—the true substantive evidence, but rather so that you might be able to test the weight to be given to each of the experts' opinions. And hence, with reference to this case history that Doctor is giving, he is not testifying to it

as proof of the case history, but something which he had read which he took into consideration in forming his opinion."

At this point counsel for defendants moved to strike the answer given by the doctor with respect to the case history on the grounds that it was hearsay. The court overruled the objection.

In response to a further question from plaintiffs' counsel the doctor proceeded to elucidate on the case history of the 17-year-old dancer to which he had previously alluded. He stated that from the case history this young woman had received a direct injury to the knee and subsequently developed pain; and within a month had a large lump; two years later the cancer was removed at which time it was then only 4 centimeters in diameter. Twenty-six years later she was still living and well. He stated that "both from my own experience and from the general reading of many cases and summaries of reports of series of cases, that in general, this is a slower-growing tumor than the average type of cancer; that in young people it is slower than in older people. . . ." In a further answer he elaborated, "And in this case, for instance, in the 17-year old in which there was a growth and it was a couple of years before removal, she still—she was able to survive apparently a lifetime. In other words, it's a slow-growing tumor that stays small and encapsulated and virtually all those that have been removed within a relatively early stage, even within years, they found small, 1 cm., half cm., 1½ cm. sized lumps quite well encapsulated, unless they waited until there was actual considerable spread, then they were bigger."

In the early case of *Baily* v. *Kreutzmann,* 141 Cal. 519, 521, 522 [75 P. 104], the Supreme Court declared:

"It has been held, without conflict and in an extended line of cases in this state, that medical works are hearsay and inadmissible in evidence, except perhaps on cross-examination when a specific work may be referred to, it seems, to discredit a witness who has based his testimony upon it. [Citing cases.] . . . If the books themselves are hearsay and inadmissible, certainly any recital of their contents or the substance thereof is none the less hearsay, and should be excluded for that reason."

In the *Baily* case, *supra,* 141 Cal. 519, over the objection of plaintiffs a medical expert called by the defendant was permitted to testify concerning a case history reported in the Annals of Medicine. The court concluded, "It is apparent

that the plaintiffs' case may have been materially prejudiced by the erroneous admission of this evidence.''

In the case at bench the trial judge permitted the doctor to testify as to these individual case histories referred to in medical journals which he had read in preparation for the trial upon the basis that whenever an expert witness gives an opinion he may, upon direct examination, be asked to state the reasons for such opinion, and thereafter he may be fully cross-examined thereon by opposing counsel. (Code Civ. Proc., § 1872.) However, as noted by the Supreme Court in the case of *People* v. *La Macchia,* 41 Cal.2d 738, 745-746 [264 P.2d 15], ''The general rule which permits a witness to state the reasons upon which his opinion is premised may not be used as a vehicle to bring before the jury incompetent evidence. To so open up the inquiry would create a disastrous break in the dike which stands against a flood of interminable investigation.'' The latter case pertained to an action in eminent domain wherein the court ruled that ''Upon direct examination, a witness never should be allowed to go into the details of particular offers for the property being condemned or specific sales or transactions in connection with other property. [Citing case.]'' This rule was subsequently modified in eminent domain cases by *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 679 [312 P.2d 680], and by the subsequent enactment .of Code of Civil Procedure section 1845.5. ▮ However, the basic rule of *People* v. *La Macchia, supra,* prohibiting a witness from putting in evidence matters which are incompetent as substantive evidence for the purpose of fortifying his opinion, even though they are offered under the guise for the reasons for his opinions, and even though they might properly have been admitted on cross-examination to test and diminish the weight to be given to his opinion, remains in force in this state. (*People* v. *Nahabedian,* 171 Cal. App.2d 302, 310-311 [340 P.2d 1053] ; see also *Buchanan* v. *Nye,* 128 Cal.App.2d 582, 586 [275 P.2d 767].)

In *Brown* v. *Los Angeles Transit Lines,* 135 Cal.App.2d 709, 716 [287 P.2d 810], appellant argued that it was error to permit an expert on direct examination to testify regarding opinions in medical textbooks. In that case the expert, after stating his opinion, said that he based it upon the reading that he had done and upon his experience in 28 years. In that testimony no textbook or other medical literature was mentioned by name and there was no statement as to the

contents of any books or literature. The admission of this testimony was held by the court not to constitute error.

Similarly, in *Healy* v. *Visalia & T. R.R. Co.,* 101 Cal. 585, 592 [36 P. 125], the court held that it was competent for an expert to state that his opinion was based upon information derived from his reading but noted, ''He was not asked to state, nor did he state, what the 'cases on record' were, nor whether the facts of those cases corresponded with the facts of the case on trial, and the contents or statements of the medical books were not given to the jury.''

These latter cases are to be distinguished from the case before us, however, since in the instant case the doctor was permitted on direct examination to go further and to make actual reference to two of the case histories and to state details concerning them. This constituted error. Here, also, it becomes our responsibility, as it was in the case of *Brown* v. *Los Angeles Transit Lines, supra,* 135 Cal.App.2d 709, (which held that medical expert testimony other than that referred to above was error) to determine whether such error was prejudicial. A review of the medical testimony indicates that the testimony of plaintiffs' expert was largely contradicted by the testimony of the two experts who testified on behalf of defendants, and from a review of such testimony and all of the circumstances of this case it cannot be said that the references to these case histories on direct examination constituted prejudicial error.

Lastly, defendants complain of conduct on the part of counsel and the court which they state was prejudicial to their cause. They assert that such conduct encompasses the entire record and they devote many pages of their opening and reply briefs to detailing specific instances in an effort to substantiate their claims. A review of the transcripts indicates the trial was vigorously and ably prosecuted by both sides and was closely and attentively presided over by an alert and interested judge. The field of inquiry quite properly delved into the obscurities and technicalities of cancer research and the court on a number of occasions interrupted the examination of witnesses in an effort to clarify either the questions being asked or the answers given. In some instances these efforts consumed a number of pages of transcript before the court returned the examination of the witness to counsel. However, in conducting such inquiries the judge gave every evidence of complete objectivity and impartiality. His rulings showed no favoritism and we find no error therein.

Part of the difficulties of which defendants complain were due to the manner of testifying of one of their medical experts. Upon occasion he would relinquish the role of witness to assume that of advocate which, as is usual in such cases, not only lowered the value of his testimony but left him vulnerable to cross-examination. We do not agree that such cross-examination was unfair or that it constituted prejudicial misconduct. Neither do we believe it would serve any purpose to review it here for to do so would prolong this opinion unduly. It is noteworthy that in his final testimony the witness acknowledged in retracting some of his previous testimony that as to the "protection" which accumulated pus would afford the foot in cushioning the effect of the falling steel bar, he had been "completely wrong" and that he had given the answer due to what he ascribed as "a bit of absent-mindedness or thoughtlessness on my part. . . ." Actually, the answer to which he referred appeared to have been prompted from his apparent desire to have his own particular views prevail, even to the extent of stating what, in the particular answer, was obviously an absurdity.

The judgment is affirmed.

Jefferson, J., and Balthis, J., concurred.

A petition for a rehearing was denied August 22, 1962.