[Civ. No. 27955.   Second Dist., Div. Four.   Sept. 21, 1964.]

MICHAEL KHANOYAN, Plaintiff and Appellant, v. ALL
   AMERICAN SPORTS ENTERPRISES, INC., Defend-
   ant and Respondent.

Harney, Ford & Schlottman and Robert E. Ford for Plaintiff and Appellant.

McBain & Morgan and James L. Roper for Defendant and Respondent.

BURKE, P. J.—On May 22, 1960, plaintiff was a paying spectator and business invitee at a "Destruction Derby," a form of entertainment operated by defendant consisting of a series of collisions between old "jalopies." The winner of the derby was the driver of the last vehicle remaining in operating condition. Seated in the twelfth row of the grandstand, plaintiff was struck in the chest by a portion of a fan blade flying from one of the colliding vehicles participating in the derby.

Plaintiff's suit for damages for personal injuries, tried before a jury, resulted in a judgment for defendant. A motion for new trial was denied and plaintiff appeals from the judgment.

The sole issue raised on appeal is the asserted error of the trial court in refusing to instruct the jury upon the doctrine of res ipsa loquitur. The appeal is brought on a settled statement, which, omitting exhibits, is partially set forth in the footnote.[1]

---

[1] *"It Is Settled and Agreed as Follows:*

". . . The 'Derby' was staged by an organization which furnished both the cars (old jalopies) and the drivers, and both the automobiles and the drivers were under the control and direction of the defendant. The plaintiff, together with one male and two female companions, sat in the 12th row of the 21-row grandstand near the announcer's booth and the TV camera.

"Gardena Stadium contained a regulation automobile race track. The

Plaintiff states that the elements required to entitle him to the inference of negligence on the part of defendant under the doctrine of res ipsa loquitur are (1) that it is the kind

'Derby' was staged on that portion of the race track, which was directly in front of the main grandstand; the balance of the race track was 'out of bounds' for the cars in the competitive 'Derby.' Ordinarily, the race track was used for the racing of automobiles. Between the race track and the grandstand was a wooden and earthen bumper guard to prevent the racing cars from leaving the track and running into the grandstand; also, between the race track and the grandstand was a chain link wire fence which was installed for auto racing and which was for the purpose of preventing cars and parts of cars, such as wheels and the like, from leaving the race track and going into the grandstands. This wire fence protected only the first row of the grandstands from flying objects; for those seated in the grandstand above the first row there was no protection by way of wire screen or otherwise from objects flying through the air from the race track into the grandstand. . . .

"The plaintiff was 29 years of age, single, powerfully built, weighing approximately 210 pounds.

"These 'Destruction Derbies' had been staged as main events during the years 1957, 1958, 1959 and 1960 on more than 50 separate occasions prior to the time that the accident occurred; each 'Destruction Derby' consisted of six or more separate events. More than 200,000 persons had witnessed the 'Derby' in this same stadium. This was the only accident that was reported to the defendant which occurred by reason of any object flying into the spectator stands from the track itself.

"Harrison Schooler, vice president of defendant corporation and business manager of the Gardena Stadium at the time of the accident, testified that the chain link fence between the race track and the spectators' bleachers was built for auto racing; that no higher fence was erected for 'Destruction Derbies' because 'debris just doesn't fly from the ''Destruction Derby'' into the grandstands.'

"Photographs taken at prior 'Destruction Derbies' were introduced into evidence; these photographs depict photographers and many other persons in close proximity of the automobiles while the 'Derby' was being conducted. E. A. (Roscoe) Turner, a witness produced by the defendant, testified that he had been in the racing business for 30 years prior to the time of the accident, and at the time of the accident was the stewart in charge of the 'Derby'; that he viewed the 'Derby' by standing at a spot inside the track within four to six feet from the point where the automobiles actually collided, and at no time did he ever 'feel that he was in any danger.'

"The evidence was undisputed as to how the accident happened. The precise cause of this accident was that one jalopy ran into the front end of the other jalopy; the force of the impact of the said collision caused the hood of the jalopy to fly off and caused one of the blades of the fan on the engine of the jalopy to break off and fly into the spectators' stands; that there was no protective screen high enough to intercept the flying portion of the fan blade to prevent it from flying into the spectators' grandstand.

"Plaintiff's only argument to the jury on the liability feature of

of accident which ordinarily does not occur in the absence of someone's negligence; (2) that it was caused by an agency or instrumentality in the exclusive control of the defendant; and (3) that the accident was not due to any voluntary action on the part of the plaintiff. (*Shahinian* v. *McCormick*, 59 Cal.2d 554, 559 [30 Cal.Rptr. 521, 381 P.2d 377]; *Raber* v. *Tumin*, 36 Cal.2d 654, 659 [226 P.2d 574]; *Ybarra* v. *Spangard*, 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258].) The facts here involved, plaintiff contends, fulfill such requirements and the doctrine should apply.

The plaintiff requested instructions on the doctrine[2] which

---

the case was the failure of the defendant to provide a protective screen high enough to prevent flying objects from going into the spectators' stand constituted actionable negligence on the part of the defendant. The case was tried and argued entirely on this theory.

"Immediately after the accident, the plaintiff was taken to the Wayne Medical Clinic in Gardena, where he was treated for 'a small laceration on the right anterior chest and thumb.' The wound on the chest was cleansed and medicated, after which a Band-Aid was applied."

(Further details concerning the purported injuries of plaintiff are omitted since the sole issue raised on appeal is the asserted error of the trial court in refusing to instruct upon the doctrine of res ipsa loquitur.)

[2]California Jury Instruction—Civil No. 206-B Res Ipsa Loquitur

"From the happening of the accident involved in this case as established by the evidence, an inference arises that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference itself is a form of evidence, and if none other exists tending to overthrow it, or if the inference, either alone or with any other evidence supporting it, preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on its part."

No. 206-C Educational

"The instruction just given may appear to constitute an exception to the general rule that the mere happening of an accident does not support an inference of negligence. The instruction, however, is based on a special doctrine of the law which may be applied only under special circumstances, they being as follows:

"First: The fact that some certain instrumentality by which injury to the plaintiff was proximately caused, was in the possession and under the exclusive control of the defendant at the time the cause of injury was set in motion; it appearing on the face of the event that the injury was caused by some act or omission incident to defendant's management.

"Second: The fact that the accident was one of such nature as does

the trial court refused to give. ▮ The underlying hypothesis for res ipsa loquitur is that, when certain elements exist and when the facts relating to the happening or occurrence of an accident are either disputed (*Shahinian* v. *McCormick, supra*, 59 Cal.2d 554) or unknown (as in *Cho* v. *Kempler*, 177 Cal.App.2d 342, 348 [2 Cal.Rptr. 167]), an inference arises of negligence, based on the presumed probability which entitles a plaintiff to a res ipsa loquitur instruction.

Defendant, on the other hand, contends that when all of the physical facts and evidence as to the nature and cause of an accident are admitted and undisputed, as it asserts is the case here, there is no reason or basis whatever for applying the doctrine since the issue of whether or not the defendant or defendants were negligent is squarely presented to the jury as a question of fact. (*Keller* v. *Pacific Tel. & Tel. Co.*, 2 Cal.App.2d 513, 525-526 [38 P.2d 182].)

It is agreed here that the sole theory of liability is that the protective screen provided by defendant was not high enough to intercept the flying particle which caused the alleged injuries. Furthermore, it is admitted that all the pertinent facts and circumstances relating to the accident in question were presented in evidence and that they are undisputed. Thus, defendant asserts, there is no basis in law or logic to instruct the jury on the doctrine of res ipsa loquitur which creates an inference based upon probabilities, when the precise and exact facts are all known. To do so, it contends, would only confuse and mislead the jury. Defendant concludes that the trial judge's refusal to give a res ipsa loquitur instruction was therefore proper and did not prejudice plaintiff in any manner.

---

not happen in the ordinary course of things, if those who have control of the instrumentality use ordinary care.

"Third: The fact that the circumstances surrounding the causing of the accident were such that the plaintiff is not in a position to know what specific conduct was the cause, whereas the one in charge of the instrumentality may reasonably be expected to know and be able to explain how the accident was caused, or at least be able to show that no failure of duty on his part was a cause.

"When all these conditions are found to have existed, they beget the inference of negligence and proximate cause concerning which I have instructed you. Also they make it reasonable that the defendant be required to show what he knows, if anything, about the causing of the accident."

In *Keller* v. *Pacific Tel. & Tel. Co., supra,* 2 Cal.App.2d 513, 525-526, it is held: "The doctrine of *res ipsa loquitur* is applicable only in the absence of actual knowledge of just how an accident occurs. . . . 'The very hypothesis of the doctrine is that the plaintiff has no knowledge of just what caused the accident, and that since the instrumentality by means of which the accident occurred is solely within the control of the defendant, negligence will be inferred upon proof of a *prima facie* case, in the absence of an adequate explanation on the part of the defendant exempting him from liability.' "

The reconciling of these two apparently conflicting views, both of which find support in the decisions, depends upon a comparison of the facts in the instant case with those in recent decisions of the Supreme Court.

In *Di Mare* v. *Cresci,* 58 Cal.2d 292, 298-300 [23 Cal.Rptr. 772, 373 P.2d 860], the physical circumstances which brought about plaintiff's injury were fully known as in the case before us. A step on the stairway gave way beneath plaintiff; she fell through the resulting opening up to her waist and was injured. The question for the jury was to determine whether by the exercise of reasonable care the lessor of the premises should have discovered the faulty condition of the stairway and corrected it. The Supreme Court held that these circumstances warranted the application of the doctrine of res ipsa loquitur, the court declaring that the doctrine is applicable ". . . where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the one responsible. [Citations.] On the basis of the existence of such probabilities, the doctrine has been applied where the defendant was responsible for construction, maintenance, or inspection of the defective premises which caused the injury. [Citations.]

"The introduction of evidence of specific acts of negligence does not deprive the plaintiff of the benefit of the doctrine unless the facts as to the cause of the accident and the care exercised by the defendant are shown as a matter of law thus eliminating any justification for resort to the inference of negligence. [Citations.] The doctrine may be invoked whether or not the defendant was in a better position than the plaintiff to explain what occurred so long as it appears more probable than not that the injury resulted from the

defendant's negligence. [Citations.] If the rules were otherwise, a plaintiff would be penalized for producing all of the evidence he has as to the cause of the accident, and in some cases the trier of fact might be denied evidence useful and relevant to the proper determination of the case. Language in *McKenzie* v. *Pacific Gas & Elec. Co.*, 200 Cal.App.2d 731, 735 [19 Cal.Rptr. 628], *Grigsby* v. *Pacific Gas & Elec. Co.*, 182 Cal.App.2d 64, 65 [5 Cal.Rptr. 616], *Hendershott* v. *Macy's*, 158 Cal.App.2d 324, 327-329 [322 P.2d 596], and *Billeter* v. *Rhodes & Jamieson, Ltd.*, 104 Cal.App.2d 137, 147 [231 P.2d 93], is disapproved insofar as it is inconsistent with the views expressed above. . . .

"The facts giving rise to the doctrine being undisputed, the jury was properly instructed that the inference of negligence arose as a matter of law. This, of course, does not mean that there was liability as a matter of law but only that defendant had the burden of meeting or balancing the inference [citation], and the instruction given in the present case recognized that the inference could be balanced by defendant by showing that she did, in fact, exercise due care or that the accident was caused by factors which did not involve negligence on her part."

Similarly, in *Furtado* v. *Montebello Unified School Dist.*, 206 Cal.App.2d 72 [23 Cal.Rptr. 476], this court, in following the law of *Di Mare* v. *Cresci, supra,* held that the circumstances of the case were such as to warrant the application of the doctrine. There, as in the case before us, the physical facts of the accident were fully known. An instructor, who was demonstrating two steel bars to pupils in his class, dropped one of the bars which struck plaintiff on the top of his foot. Defendants argued, as they do in the case before us, that the doctrine was inapplicable, claiming that the cause of the accident was well known. They maintained further that to apply the doctrine, under the facts presented, permitted, if in fact it did not require, the jury to give double weight to the evidence against defendants, first, through presentation of the facts themselves as to how the accident occurred, and then through utilizing the inference of negligence under the doctrine. They asserted, as does the defendant here, that plaintiffs' evidence revealed exactly and specifically wherein and how plaintiffs claim negligence to have existed. The defendants in *Furtado, supra,* asserted that they were thereby required not only to meet this specific charge of negligence

but also by the instruction to the jury to bear the burden of meeting the inference. This court ruled that under the *Di Mare* case the giving of the instruction was proper.

Similarly, in *Shahinian* v. *McCormick, supra,* 59 Cal.2d 554, at p. 563, ''Even if it could be said that there was testimony which tended to show specific acts of negligence or which touched upon the cause of the accident, that fact alone will not deprive the plaintiff of a res ipsa loquitur instruction.''

In *Bischoff* v. *Newby's Tire Service,* 166 Cal.App.2d 563, 568 [333 P.2d 44], plaintiff drove his car to defendants' tire shop, removed one of the wheels and took it and a spare tire into the shop for a tire change. Defendant was installing the spare tire when the head of the hammer he was using flew off and hit plaintiff in the face. Plaintiff contended on appeal that the trial court failed to give his requested instructions on res ipsa loquitur and the trial court was reversed for this reason. As in the case at bench, there was no dispute that the head of the hammer did fly off. Thus, the exact cause of the injury was fully known. There was a conflict in the evidence as to where plaintiff was standing and as to whether he had been told to move. The court ruled that all of the three factors heretofore mentioned, which bring the doctrine of res ipsa loquitur into play, were present. The court observed that ''[f]rom the evidence a jury reasonably could infer that an accident such as here took place probably would not have occurred in the absence of negligence,'' and that therefore it was a proper case for the giving of an instruction on res ipsa loquitur.

In *Cho* v. *Kempler, supra,* 177 Cal.App.2d 342, 348-349, the court stated : ''The increasing use of res ipsa loquitur exemplifies the growing recognition of the courts of the special obligations which arise from particular relationships. Prosser, *Res Ipsa Loquitur in California,* 37 Cal.Law Rev. (1949) 183, points out that 'where the particular defendant is in a position of some special responsibility toward the plaintiff or the public' (p. 224) the doctrine is designed to protect the dependent party from unexplained injury at the hands of one in whom he has reposed trust. The device 'has been used by the courts, consciously or otherwise, as a deliberate instrument of policy imposing a procedural disadvantage upon the defendant which will require him to establish his freedom from negligence or to pay.' (*Idem.*) In an integrated so-

ciety where individuals become inevitably dependent upon others for the exercise of due care, where these relationships are closely interwoven with our daily living, the requirement for explanation is not too great a burden to impose upon those who wield the instruments of injury and whose due care is vital to life itself.''

In the case before this court, the crucial question was whether the defendant had taken proper precautions to protect the spectators from injury. Many factors could well have been considered by the jury in reaching its determination, for example: the proximity to the spectator seats of the area where violent collisions of automobiles were to take place; the nature and extent of the barriers; the height of the fence in relation to the proximity of the field; the care exercised by the defendant as to the type of vehicles involved, whether any inspection was ever made, whether any special precautions were taken to insure that the hoods and other parts of the vehicles likely to be jarred loose by violent collision were specially secured to prevent flying debris from injuring spectators. Thus, while precise knowledge as to what struck plaintiff and from whence the missile came is known and undisputed, whether such occurrence was the result of negligence on the part of defendant due to a faulty protective fence, or whatever cause, was an issue for the jury and concerning which plaintiff was entitled to the application of the doctrine.

We hold that where a spectator, occupying a position in the area designated for his use, is injured, through no voluntary action on his own part, from flying debris resulting from the deliberate destruction of motor vehicles within the exclusive control of those producing the event, such injuries do not ordinarily occur in the absence of someone's negligence, and the doctrine of res ipsa loquitur is applicable.

The trial court permitted the introduction of evidence of lack of prior accidents without objection by plaintiff. On appeal plaintiff contends such evidence is only ''admissible in meeting a prima facie case under the doctrine of res ipsa loquitur.'' (*City of Oakland* v. *Pacific Gas & Elec. Co.*, 47 Cal. App.2d 444, 448 [118 P.2d 328].) Plaintiff further contends that for the trial court to permit such evidence and then to refuse to permit invocation of the doctrine was highly prejudicial and misled the jury on the question of foreseeability; having admitted such evidence on the only tenable

theory—to refute a prima facie case on res ipsa loquitur—the court should have instructed the jury on the doctrine.

As stated in *Thompson* v. *B. F. Goodrich Co.*, 48 Cal.App.2d 723, 729 [120 P.2d 693], "Even though it be held in some jurisdictions that such evidence [that no one had ever been injured while using the particular entrance] is admissible, the rule has not been so adopted in California. [Citation.] Here it has been held that evidence of *previous accidents* similar in character may be admitted to charge one with the duty of anticipating a dangerous condition and of taking appropriate steps to avert the danger. [Citations.] But it has been definitely held that evidence of the *absence* of previous accidents at the same place is not admissible. [Citations.] As said in the recent case of *City of Oakland* v. *Pacific Gas & Elec. Co.*, *supra* [47 Cal.App.2d 444 (118 P.2d 328)], 'The absence of previous accidents should not and does not have a reasonable tendency to relieve a tort feasor from liability for the invasion of the rights of others or damage resulting therefrom, but such evidence is admissible in meeting a *prima facie* case under the doctrine of *res ipsa loquitur*, or a *plaintiff's* claim that an instrumentality had previously been used a reasonable number of times and found to be safe. [Citations.]' "

It was error for the court in the case before us to have admitted the evidence that "Destruction Derbies" had been staged for four years on fifty separate occasions, consisting of six or more events, before 200,000 spectators, without a previous accident of a similar nature, in view of the fact that the court concluded that the doctrine of res ipsa loquitur was inapplicable under the particular facts. While counsel for plaintiff acquiesced by failing to object to the introduction of this testimony, no doubt this was done under the mistaken belief that the court would instruct on res ipsa loquitur. ■ We must therefore determine whether failure to instruct on res ipsa loquitur and the improper admission of this evidence resulted in a miscarriage of justice requiring that the judgment be set aside. (Cal. Const., art. VI, § 4½.)

While a review of the entire record indicates that the jury may well have been persuaded to render judgment for defendant because the medical testimony indicated that much of the disabilities complained of by plaintiff were not attributable to the accident, it is not within the purview of this court to speculate as to what was the basis for the defense

verdict, as the affirmance or reversal of the case must stand or fall upon our determination of whether failure to instruct on res ipsa loquitur and the admission of the irrelevant evidence were prejudicial and resulted in a miscarriage of justice. We conclude that the inadmissible evidence carried considerable force and that the jury might well have reasoned that if 200,-000 spectators had participated in witnessing similar previous events without harm or injury there was no negligence on the part of defendant in the protective devices installed for the protection of spectators. Defendant's breach of the duty to use ordinary and reasonable care toward patrons was squarely presented to the jury on the issue of failure to provide adequate screen protection as a matter of actionable neglect and liability. Thus, the evidence improperly admitted had a direct bearing upon the crucial question and the jury's consideration of whether or not the protective screening was adequate should not have been subjected to such persuasive force as was undoubtedly provided by the improperly admitted evidence, in the absence of an instruction on the doctrine of res ipsa loquitur.

We conclude, therefore, that under the provisions of article VI, section 4½, of the Constitution the errors complained of resulted in a miscarriage of justice and require a reversal.

The judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.