[Sac. No. 7999. In Bank. June 7, 1974.]

LAURA FRANCES BROWN et al., Plaintiffs and Appellants, v.
C. LELAND COLM, Defendant and Respondent.

## COUNSEL

A. John Merlo, Les Hait and Morey W. Fuqua for Plaintiffs and Appellants.

Leonard & Lyde, Raymond A. Leonard and Robert L. Hewitt for Defendant and Respondent.

## OPINION

**MOSK, J.**—In 1968, plaintiffs, who are husband and wife, filed a malpractice action alleging defendant had been negligent in performing surgery upon plaintiff wife in 1949.[1] The trial court refused to permit an expert witness to testify as to the standard of care prevailing in 1949, on the ground that the witness was not personally acquainted with the medical standards of that year since he had not been admitted to practice until several years thereafter, and his opinion was based upon a study of medical literature. We conclude that this ruling was erroneous.

In July 1949, while plaintiff was in the hospital recovering from an operation performed by defendant, a nurse, in administering an enema, forced a hard rectal tube from plaintiff's rectum into her vagina. This created a recto-vaginal fistula, a small hole in the wall between the vagina

---

[1]For literary convenience, the term "plaintiff" will be employed hereafter in this opinion to refer to plaintiff wife.

and the rectum. The next day defendant, in attempting surgical repair, stitched the fistula with stainless steel sutures not absorbable by the body.

In the years following the operation, plaintiff experienced considerable physical and emotional difficulties. In 1968, Dr. Blodgett, a physician and surgeon practicing in the same geographic area as defendant, found in treating plaintiff that she had a recto-vaginal fistula. He proceeded to repair this condition surgically and in doing so discovered that the non-absorbable stainless steel sutures employed by defendant in 1949 had become distorted into a figure-eight in the immediate area of the fistula. After the 1968 surgery, plaintiff's condition improved markedly.

She filed the present action a few months after the second operation, alleging that she did not discover defendant's earlier negligence until the subsequent surgery.[2] At the trial, Dr. Blodgett testified that the fistula which defendant had purported to repair in 1949 had never healed but was in actuality the same fistula involved in the second operation, and that this defect had been caused by the steel sutures producing an infection and mechanical irritation in the area.

Plaintiff attempted to elicit testimony from Dr. Blodgett as to the standard of care which prevailed in the community in 1949 regarding the use of stainless steel sutures in the repair of recto-vaginal fistulas. She offered to make this showing on the basis of evidence as to the standard of care after 1959, when Dr. Blodgett was engaged in active medical practice, and testimony that the same standard prevailed in 1949 when the initial operation was performed. According to plaintiff, Dr. Blodgett, in preparation for his testimony regarding the standard of care applicable in 1949 and thereafter, had made an exhaustive study of virtually all the available medical literature on the subject. Defendant objected to the proffered testimony on the ground that Dr. Blodgett's opinion as to the 1949 standard of care was not based upon his actual practice of medicine during the time in question. The trial court sustained the objection. No other expert testimony was offered.

At the conclusion of plaintiff's case, defendant moved for nonsuit, which was granted. The motion was based primarily on the ground that plaintiff had failed to demonstrate defendant violated the standard of care prevailing in the community at the time the operation was performed in 1949.

■ It is settled that a doctor is required to apply that degree of skill,

[2]Plaintiff husband joined in the action alleging that as a result of defendant's negligence he had incurred medical expenses, and his wife's ability to render services, comfort, and companionship had been impaired.

knowledge and care ordinarily exercised by other members of his profession under similar circumstances. (*Bardessono* v. *Michels* (1970) 3 Cal. 3d 780, 788 [91 Cal.Rptr. 760, 478 P.2d 480, 45 A.L.R.3d 717]; *Sinz* v. *Owens* (1949) 33 Cal.2d 749, 753 [205 P.2d 3, 8 A.L.R.2d 757].) Proof of this standard is ordinarily provided by another physician, and if a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes to the weight of his testimony rather than to its admissibility. (*Seneris* v. *Haas* (1955) 45 Cal.2d 811, 833 [291 P.2d 915, 53 A.L.R.2d 124].)

Defendant relies upon a rule stated in some cases that a witness who testifies as to a particular standard of care must possess "occupational experience" or "practical knowledge" of the subject in order to qualify as an expert. (*Huffman* v. *Lindquist* (1951) 37 Cal.2d 465, 478 [234 P.2d 34, 29 A.L.R.2d 485]; *Sinz* v. *Owens, supra,* 33 Cal.2d 749, 753.)[3] He contends that any knowledge which Dr. Blodgett acquired as to the 1949 standard of care was based solely upon his review of the medical literature since the doctor was not a practicing physician at that time, and therefore the doctor did not meet the qualification of "occupational experience" as a predicate to his testimony regarding the standards prevailing at that early date.

We do not agree. This case does not involve circumstances in which a physician has had no practical experience upon which to base his testimony and relies entirely upon textual material for his opinion; indeed, there is no challenge to Dr. Blodgett's qualifications to testify to the medical standards relevant to the post-1959 period. Rather, our inquiry focuses upon whether the sole fact that his training and experience were acquired 10 years after the alleged malpractice and thereafter renders his opinion as to the standard of care prevailing in 1949 per se inadmissible. In that connection we have been unable to find any persuasive authority relating occupational experience exclusively to the precise time of the alleged

---

[3]The rule as stated by other authorities is that a witness may acquire the necessary expertise by means other than occupational experience, such as by education or observation. (*Cline* v. *Lund* (1973) 31 Cal.App.3d 755, 765-766 [107 Cal.Rptr. 629]; see *Seneris* v. *Haas* (1955) 45 Cal.2d 811, 833 [291 P.2d 915, 53 A.L.R.2d 124]; Evid. Code, § 720; 31 A.L.R.3d 1163, 1167; 31 Am.Jur.2d, p. 629.) Defendant relies heavily upon a statement contained in Wigmore and quoted in *Sinz* and other cases, defining "occupational experience" as experience "obtained casually and incidentally, yet steadily and adequately, in the course of some occupation or livelihood." (2 Wigmore on Evidence (1940) § 556, p. 635.) However, Wigmore does not state that this type of experience is required in each case as a predicate to expert testimony, nor does he relate the experience to any time factor. To the contrary, he expressly recognizes in the same section that a witness may not need such experience in order to qualify as an expert.

malpractice. We hold that an invariable rule which would require in all cases that an expert must have acquired a personal, working knowledge of the standard of care at the precise time when the alleged malpractice occurred would be untenable.

■ While a layman may not testify to a fact which he has learned only by reading a medical book, there is no question that a professional physician may rely upon medical texts as the basis for his testimony. (*Healy* v. *Visalia etc. R. R. Co.* (1894) 101 Cal. 585, 591-592 [36 P. 125]; *Hope* v. *Arrowhead & Puritas Waters, Inc.* (1959) 174 Cal.App.2d 222, 230 [344 P.2d 428]; *Brown* v. *Los Angeles Transit Lines* (1955) 135 Cal.App. 2d 709, 716 et seq. [287 P.2d 810]; *Forrest* v. *Fink* (1925) 71 Cal.App. 34, 39-40 [234 P. 860].)[4] Wigmore justifies the foregoing distinction by pointing out that a medical doctor possesses a professional experience which gives him a knowledge of the trustworthy authorities and the proper sources of information, as well as a degree of personal observation of the general subject enabling him to estimate the plausibility of the views expressed. Furthermore, he opines, it may be impossible to obtain information on the particular matter except through the reported data. (2 Wigmore on Evidence (1940) § 665b, pp. 784-785.)

■ In the present case, Dr. Blodgett examined all the available literature on the matter at issue and his opinion was based not only upon this material but also upon his personal training and experience acquired in the decade after 1959 in the use of suture materials. He was offering his opinion only as to whether the practice was the same 10 years previously. Defendant's insistence that Dr. Blodgett was not qualified to testify as to the 1949 standard tends to equate his qualifications with those of a layman in relating knowledge of medical practice in 1949, and disregards entirely the extent to which his training and experience contribute to his expert evaluation of the prior standard of care.

Furthermore, there is little likelihood that plaintiff could have secured any expert witness qualified to testify as to the standard of care prevalent in a similar community for a particular operation, notably uncommon in nature, performed 23 years prior to the trial. The pragmatic result of excluding Dr. Blodgett's expert testimony was to totally insulate the

---

[4]Cases holding that a doctor may not merely recite into evidence the contents of the medical authorities upon which he has based his opinion are not relevant to the issue before us. (*Baily* v. *Kreutzmann* (1904) 141 Cal. 519, 521-522 [75 P. 104]; *Furtado* v. *Montebello Unified Sch. Dist.* (1962) 206 Cal.App.2d 72, 79 [23 Cal.Rptr. 476].) Plaintiff offered only to show that Dr. Blodgett had examined medical texts in arriving at his opinion. *Furtado* itself distinguishes such a situation from one involving the recitation of textual material. (206 Cal.App.2d at pp. 79-80.)

defendant from responsibility for his alleged act of negligence. (See *Cline* v. *Lund, supra,* 31 Cal.App.3d at p. 767.)

Indeed, under the peculiar circumstances of the present case, medical literature may be a more reliable guide to the 1949 standard than the testimony of a physician who had practiced in that year. Since, as defendant conceded, a recto-vaginal fistula is a very rare occurrence, the testimony of a single doctor, even if there were any qualified to testify, as to the prevailing standard used in the repair of such a defect nearly two and a half decades before the trial in the same or a similar community would probably have more limited probative value than an evaluation of the textual material by a recognized expert who had acquired practical experience, albeit at a later date.

There are no cases in California or other jurisdictions directly in point. One decision relies upon the fact that a retired doctor had not been in active practice for 25 years as one of several factors justifying the exclusion of his testimony as to current practice (*Huffman* v. *Lindquist, supra,* 37 Cal.2d 465, 478), but there the court found "questionable sufficiency of his medical background and knowledge" of the subject matter; here no issue was raised as to Dr. Blodgett's medical background and knowledge. On the other hand, other cases have held a physician qualified to testify as an expert even though he had been in retirement for a number of years at the time the alleged negligent act occurred (*Sampson* v. *Veenboer* (1931) 252 Mich. 660 [234 N.W. 170]; *Carbone* v. *Warburton* (1952) 22 N.J. Super. 5 [91 A.2d 518]; cf. *Meiselman* v. *Crown Heights Hospital* (1941) 285 N.Y. 389 [34 N.E.2d 367, 372]). One early California case indicated "one holding a license to practice medicine and surgery may, by reason of that fact alone, be sufficiently an expert to testify as to the probable effect of certain injuries." (*Salmon* v. *Rathjens* (1907) 152 Cal. 290, 299 [92 P. 733].)

These authorities are of limited value. The determinative issue in each case must be whether the witness has sufficient skill or experience in the field so that his testimony would be likely to assist the jury in the search for the truth, and no hard and fast rule can be laid down which would be applicable in every circumstance. Indeed this court stated in *Huffman* v. *Lindquist, supra,* 37 Cal.2d 465, 478, that "each case must be judged on its own facts."

The unmistakable general trend in recent years has been toward liberalizing the rules relating to the testimonial qualifications of medical experts. Thus, whereas a number of earlier cases held that a physician of necessity

must possess the skill ordinarily practiced only in the *same* locality (see, e.g., *Trindle* v. *Wheeler* (1943) 23 Cal.2d 330, 333 [143 P.2d 932]), only six years later this requirement was relaxed so that a physician was deemed qualified as an expert if he could testify to the practice in a *similar* community. (*Sinz* v. *Owens, supra,* 33 Cal.2d 749, 756.) Some early cases were unbending in requiring expertise as to the precise injury involved in the litigation, as, e.g., not permitting an autopsy surgeon to testify on urology (*Moore* v. *Belt* (1949) 34 Cal.2d 525 [212 P.2d 509]). Other authorities, however, have permitted variations, as, e.g., a pathologist was qualified to testify as to causes of aseptic necrosis (*Agnew* v. *City of Los Angeles* (1950) 97 Cal.App.2d 557, 566 [218 P.2d 66]); an expert in otolaryngology to testify regarding plastic surgery (*Mirich* v. *Balsinger* (1942) 53 Cal.App.2d 103 [127 P.2d 639]); a homeopathic physician and surgeon to testify on the degree of care required of a physician educated in the allopathic school of medicine (*Hutter* v. *Hommel* (1931) 213 Cal. 677, 681 [3 P.2d 554]); a pathologist and professor of pathology to testify on the subject of gynecology (*Cline* v. *Lund, supra,* 31 Cal.App.3d at p. 766).

There are sound and persuasive reasons supporting this trend toward permitting admissibility more readily, rather than rigidly compelling rejection of expert testimony. It is obvious that an overly strict standard of qualification would make it difficult and in some instances virtually impossible to secure a qualified expert witness. In the present case, for example, it is doubtful that plaintiff could produce a medical doctor who was qualified to testify as to the standard of care in view of the rarity of the operation and the fact that the surgery had occurred in a comparatively small and isolated community 23 years prior to trial.

On the other hand, if the threshold test of general testimonial qualification is found to be met and the witness is permitted to testify on direct examination, he is subject to as penetrating a cross-examination as the ingenuity and intellect of opposing counsel can devise. This inquiry may challenge not only the knowledge of the witness on the specific subject at issue, but also the reasons for his opinion and his evaluation of any written material upon which he relied· in preparation for his testimony. (Evid. Code, § 721.) Further, a defendant is free to argue that the witness' testimony is not entitled to acceptance or credibility because he lacks personal acquaintance with the subject at the time the alleged negligent act occurred, and defendant may produce his own witnesses in rebuttal. These measures are more than adequate to protect a defendant's interests.

■ It is true, as defendant contends, that the question whether a

witness qualifies as an expert is a matter addressed in the first instance to the sound discretion of the trial court. (*Sinz* v. *Owens, supra,* 33 Cal. 2d 749, 755.) It is also elementary, however, that the court will be deemed to have abused its discretion if the witness has disclosed sufficient knowledge of the subject to entitle his opinion to go before the jury. (*Seneris* v. *Haas, supra,* 45 Cal.2d 811, 833.) Indeed, the exclusion of the sole expert relied upon by a party because of an erroneous view of his qualifications is, in a case where expert testimony is essential, an abuse of discretion as a matter of law requiring reversal. (*Moore* v. *Belt, supra,* 34 Cal.2d at p. 552 (Traynor, J., dissenting); see 7 Wigmore on Evidence, § 2090, pp. 453-455.) ■ Since the trial court's exclusion of Dr. Blodgett's testimony was based entirely upon his lack of personal experience with the standard of care prevailing in 1949, we believe for the reasons stated above that the order was erroneous. ■ Clearly, the error was prejudicial, as the primary basis for granting the nonsuit was the lack of evidence in the record as to the 1949 standard of care.

Plaintiff makes the additional assertion that the motion for nonsuit was improperly granted because she had produced sufficient evidence to justify a finding in her favor even in the absence of the excluded testimony. In view of our conclusion we need not reach this contention.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Clark, J., concurred.