Filed 8/10/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LIDIA C. BORRAYO, <br><br>      Plaintiff and Appellant, <br><br> v. <br><br> G. JAMES AVERY, <br><br>      Defendant and Respondent. | A143765 <br><br> (San Francisco County <br> Super. Ct. No. CGC12525769) |

Plaintiff Lidia C. Borrayo sued defendant Dr. G. James Avery, alleging he had engaged in medical malpractice during the course of treating her for a condition known as thoracic outlet syndrome. Defendant moved for summary judgment, which the trial court granted after sustaining his objection to her sole expert witness's declaration. On appeal, plaintiff argues that this expert witness, a physician licensed to practice medicine in Mexico, was qualified to provide an opinion about the standard of care to which defendant was held. We agree and reverse.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*A.     Background*

For many years, plaintiff worked for eight to 10 hours a day in silk-screen production. The work involved repetitive motions such as pushing her right arm back and forth and lifting fabric up and down, producing 200 canvasses per day, each using three colors.

On May 19 and 20, 2008, Dr. Abraham Castrejon Pineda, a physician licensed in Mexico, performed orthopedic examinations of plaintiff.

On March 5, 2009, plaintiff sought treatment from defendant. At that time, she presented with longstanding complaints of intense pain in her right shoulder and scapula,

numbness and swelling, painful grip, and weakness when raising her right elbow. After examining her and reviewing MRI results, defendant diagnosed her as having severe thoracic outlet syndrome (TOS)[1] on the right side, secondary to repetitive stress at work. He recommended that she undergo surgery to rectify the condition.

On September 4, 2009, defendant performed the recommended surgery on plaintiff. The surgery involved the removal of the right first rib. Plaintiff suffered adverse symptoms approximately 12 months following the surgery, including pain upon moving her right arm, as well as difficulty in swallowing food.

On August 3, 2011, defendant referred plaintiff to Dr. James Kelly, a surgeon who performs clavicular stabilization surgery.

On July 13, 2012, defendant and Kelly evaluated plaintiff together and reviewed the results of an MRI. Based on this evaluation, both doctors ultimately concluded plaintiff was not a candidate for stabilization surgery because her right sternoclavicular joint was "not frankly unstable."

**B.**     ***Procedural History***

On November 2, 2012, plaintiff filed a complaint against defendant for medical malpractice.

On June 3, 2014, defendant filed a motion for summary judgment. In his moving papers, he asserted plaintiff could not establish an essential element of her claim because the medical care and treatment he had provided to her fell within the standard of care. In support, he included a declaration from Dr. Jason T. Lee, who stated that defendant had appropriately performed the surgical procedure and had provided appropriate

---

[1] TOS refers to a constellation of symptoms which arise due to compression of blood vessels or brachial plexus nerves in the space between the clavicle and the first rib (i.e., the thoracic outlet). Compression of the brachial plexus nerves causes a variety of symptoms, including pain in the shoulder and scapula area, pain, numbness, swelling and tingling in the arm or hand, reduced grip strength, and weakness when raising the arm. Thoracic outlet syndrome commonly arises in patients whose occupation requires repetitive motion, which causes inflammation, which in turn results in compression of the brachial plexus nerves.

postoperative care and followup care.  Lee also offered the opinion that plaintiff's subsequent development of pain and instability of the sternoclavicular joint was caused by her underlying medical condition.

On August 8, 2014, plaintiff filed her opposition to defendant's motion, submitting a declaration from Pineda, who opined that defendant had destabilized plaintiff's right sternoclavicular joint during her surgery when he removed the first rib by carelessly or unskillfully cutting or disrupting ligaments that hold the right sternoclavicular joint in place.

In his reply brief filed on August 15, 2014, defendant objected to Pineda's declaration, contending his opinions were speculative and lacked foundation.  He also asserted plaintiff had failed to establish that Pineda was sufficiently familiar with the applicable standard of care.

On September 2, 2014, the trial court filed its order granting defendant's motion for summary judgment.  The court sustained defendant's evidentiary objection, concluding Pineda had supplied "absolutely no information about the appropriate standard of care in the United States.  There is no information whether Dr. Pineda has spoken with American doctors or reviewed American publications regarding the treatment of thoracic outlet syndrome in the United States."  The court found plaintiff had failed to meet her burden of production to establish a triable issue of material fact regarding whether defendant had breached the standard of care.

Judgment for defendant was entered on September 25, 2014.  This appeal followed.

## DISCUSSION

### A.    *Summary Judgment Standard Of Review*

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851, our Supreme Court described a party's burdens on summary judgment motions as follows:  "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.  That is because of the general principle that a party who

3

seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [¶] [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question." (Fns. omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

We review de novo the trial court's decision to grant the summary judgment motion. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67–68.) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco,* at p. 336; *Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196.) A court's decision to exclude expert testimony is reviewed for abuse of discretion. (*People v. Bolin* (1998) 18 Cal.4th 297, 321–322.)

## B.     *Importance of Expert Testimony in Medical Malpractice Cases*

" '[I]n any medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." ' " (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606; *Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 468, fn. 2 (*Avivi*).)

Opinion testimony from a properly qualified witness is generally necessary to demonstrate the elements for medical malpractice claims. (*Barris v. County of Los*

4

*Angeles* (1999) 20 Cal.4th 101, 108, fn. 1; *Avivi, supra,* 159 Cal.App.4th at p. 467, fn. 1.) Evidence Code section 720, subdivision (a) provides: "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert."

When a defendant health care practitioner moves for summary judgment and supports his motion with an expert declaration that his conduct met the community standard of care, the defendant is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence. (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 984–985.) As noted above, the trial court sustained defendant's evidentiary objections to Pineda's declaration based solely on its conclusion that the declaration did not demonstrate he was qualified to opine on the practice of medicine in the United States. This was an abuse of discretion.

## C.     *The Standard of Care's Locality Factor*

At one time, in medical malpractice cases generally, the standard of care required "that a physician or surgeon have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality . . . ." (*Lawless v. Calaway* (1944) 24 Cal.2d 81, 86.) More recently, however, "the Supreme Court has formulated the standard of care as that of physicians in similar *circumstances* rather than similar *locations*." (*Avivi*, *supra,* 159 Cal.App.4th at p. 468, italics in original.) Today, "neither the Evidence Code nor Supreme Court precedent *requires* an expert witness to have practiced in a particular locality before he or she can render an opinion in an ordinary medical malpractice case." (*Avivi,* at p. 472, italics added.)

For example, in *Avivi,* the appellate court concluded an orthopedist who lived and practiced in Israel was sufficiently qualified to provide an opinion about the standard of care in Southern California for the treatment of an arm fracture despite never being board certified by any United States medical board, nor providing any treatment to patients in the United States. (*Avivi*, *supra*, 159 Cal.App.4th at p. 471.) The court reasoned "the

5

appropriate test for expert qualification in ordinary medical malpractice actions is whether the expert is familiar with circumstances similar to those of the respondents; familiarity with the standard of care in the particular community where the alleged malpractice occurred, which relevant, is generally not requisite . . . ." (*Avivi,* at p. 465.) The court also observed that "[g]eographical location may be a factor considered in making that determination, but, by itself, does not provide a practical basis for measuring similar circumstances." (*Avivi*, at p. 470.)  In sum, while locality is a circumstance that may be considered, it is not determinative.

It is important to recall the historical background of the locality factor:  "[T]he theory supporting the rule that the expert must be familiar with the degree of care used in the particular locality where the defendant practices 'is that a doctor *in a small community or village, not having the same opportunity and resources for keeping abreast of the advances in his profession*, should *not* be held to the same standard of care and skill as that employed *by physicians and surgeons in large cities*.'  [Citation.]  In earlier days, when there was little intercommunity travel, the courts required personal experience with the practice of physicians in the particular community where the plaintiff was treated as the basis of the expert's testimony concerning the degree of care which should have been used." (*Sinz v. Owens* (1949) 33 Cal.2d 749, 754 (*Sinz*), first italics partly in original and partly added, second and third italics added.)  The locality requirement thus appears to have been designed to "level the playing field" for physicians who had less access to advanced medical techniques.

Sixty-seven years ago our Supreme Court observed:  "Today, with the rapid methods of transportation and easy means of communication, the horizons have been widened, and the duty of a doctor is not fulfilled merely by utilizing the means at hand in the particular village where he is practicing.  So far as medical treatment is concerned, the borders of the locality and community have, in effect, been extended so as to include those centers readily accessible where appropriate treatment may be had which the local physician, because of limited facilities or training, is unable to give.' " (*Sinz, supra,* 33 Cal.2d at p. 755.)  Obviously, our horizons are much wider today than at the time *Sinz*

6

was decided, and it is not unreasonable to extend them across international boundaries. Importantly, defendant does not suggest to us that the standard of care in Mexico is *higher* than the standard of care in the United States. Thus, there does not appear to be any inherent unfairness in allowing Pineda to offer his opinion on defendant's conduct.

In fact, defendant fails to offer any explanation as to how the conditions or circumstances of plaintiff's treatment in California would differ from those in Mexico. Citing to Code of Civil Procedure section 437c, subdivision (d), he instead asserts it is plaintiff's burden to present evidence that the standard of care in Mexico is the same as the standard of care in the United States. That statute provides: "Supporting and opposing affidavits or declarations shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations. An objection based on the failure to comply with the requirements of this subdivision, if not made at the hearing, shall be deemed waived." The last sentence of this provision arguably suggests that the burden of proof actually falls on the party making the evidentiary objection, in this case defendant.[2]

Regardless, with the locality issue placed in its proper perspective, Pineda's declaration does not suggest to us that he is unqualified to render an opinion in this case. His declaration and attached curriculum vitae reveal that he has practiced as an orthopedic surgeon for more than 30 years, and is licensed as a specialist in orthopedic surgery. He has also performed over 500 orthopedic surgeries, including approximately 10 to 12 TOS surgeries, and approximately six to eight surgeries to repair dislocated or subluxated sternoclavicular joints. Pineda stated that through his training and experience he was familiar with the standard of care for TOS surgeries, as well as with how

---

[2] In finding that the locality factor is not the controlling assessment when considering medical expert testimony at summary judgment, we have pointed out the relevant features of Dr. Pineda's background and familiarity with the particular case and appellant. Importantly, we find nothing in the expert declaration from respondent to indicate we should disregard appellant's expert declaration at summary judgment.

7

sternoclavicular joints can be dislocated or subluxated. Additionally, he had personally performed orthopedic examinations of plaintiff both before and well after her surgery, and claimed to be knowledgeable in the interpretation of medical films, including X-rays, CT scans, and MRI's. In our view, Pineda's declaration shows he possesses the "special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates," as required by Evidence Code section 720, subdivision (a).

While not determinative, we also note Pineda's declaration reflects some familiarity with the standard of care for the performance of orthopedic surgeries in the United States, as his resume also shows he has attended at least one professional conference in the United States. To the extent Pineda's expertise is subject to question, we note "if a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes to the weight of his testimony rather than to its admissibility." (*Brown v. Colm* (1974) 11 Cal.3d 639, 643 (*Brown*).) Professor Wigmore affirms the general rule that "a medical doctor possesses a professional experience which gives him a knowledge of the trustworthy authorities and the proper sources of information, as well as a degree of personal observation of the general subject matter enabling him to estimate the plausibility of the views expressed." (*Brown*, at p. 644, citing 2 Wigmore on Evidence (1940) § 665b, pp. 784–785.) Locality does not necessarily make one doctor a better expert over another physician. "The unmistakable general trend in recent years has been toward liberalizing the rules relating to the testimonial qualifications of medical experts. . . . [¶] There are sound and persuasive reasons supporting this trend toward permitting admissibility more readily, rather than rigidly compelling rejection of expert testimony." (*Brown*, at pp. 645–646.)

The focus here is whether the medical expert witness has sufficient skill or experience in the field of medical practice involved in the malpractice claim, such that his testimony will assist the jury in the search for the truth. "Where a witness has disclosed sufficient knowledge, the question of the degree of knowledge goes more to the weight of

8

the evidence than its admissibility." (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 38 (*Mann*).)

It must also be remembered that nothing we have said prevents defendant from vigorously cross-examining Pineda at trial. As stated by our Supreme Court in *Brown, supra,* 11 Cal.3d at p. 646: "[I]f the threshold test of general testimonial qualifications is found to be met and the witness is permitted to testify on direct examination, he is subject to as penetrating a cross-examination as the ingenuity and intellect of opposing counsel can devise. This inquiry may challenge not only the knowledge of the witness on the specific subject at issue, but also the reasons for his opinion and his evaluation of any written material upon which he relied in preparation for his testimony. [Citation.] Further, a defendant is free to argue that the witness' testimony is not entitled to acceptance or credibility because he lacks personal acquaintance with the subject at the time the alleged negligent act occurred, and defendant may produce his own witnesses in rebuttal. These measures are more than adequate to protect a defendant's interests."

Defendant also contends that even if Pineda's declaration was improperly excluded, it lacks evidentiary value "because it fails to identify any facts, evidence or basis for the opinions asserted therein." However, the trial court did not sustain defendant's objection on that basis, instead relying solely on the locality factor. Because the court rejected Pineda's declaration for all purposes, it had no occasion to reach the further issue of whether the declaration lacked sufficient evidentiary value. We decline to address that issue in the first instance on appeal.

A trial court "will be deemed to have abused its discretion if the witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury." (*Mann*, *supra*, 38 Cal.3d at p. 39.) Such is the case here. Accordingly, we conclude the trial court abused its discretion in sustaining defendant's locality objection. In light of our conclusion, we need not address the parties' remaining arguments.

9

## DISPOSITION

The judgment is reversed.

_____
DONDERO, J.

We concur:

_____
HUMES, P. J.

_____
MARGULIES, J.

| | |
|---|---|
| Trial Court | San Francisco County Superior Court |
| Trial Judge | Hon. Ernest Goldsmith |
| Counsel for Plaintiff and Appellant | Law Offices of Michael E. Adams<br>Michael E. Adams |
| Counsel for Defendant and Respondent | Oium Reyen & Pryor<br>Virgil F. Pryor<br>Bret R. Landess |