Filed 2/23/22  P. v. Harper CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAPHAEL HARPER III,<br><br>    Defendant and Appellant. | 2d Crim. No. B308975<br>(Super. Ct. No. 18CR02287)<br>(Santa Barbara County) |

A jury convicted appellant Raphael Harper III of corporal injury to a "dating partner" (Pen. Code, § 273.5[1]).  The court sentenced him to 120 days in jail, suspended imposition of the sentence, and granted him three years of probation.

Harper contends the trial court erred by admitting evidence of past acts of violence against the victim; by allowing improper expert testimony about domestic violence; by denying his motion for mistrial following a disruption in court by a mentally ill

---

[1] All statutory references are to the Penal Code unless otherwise stated.

defense sympathizer; and by imposing a three-year probation term instead of a two-year term.

We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Santa Barbara police responded to a domestic disturbance call at the Presidio Apartments on the afternoon of March 12, 2018. The facility's manager reported a woman arguing loudly over the phone and throwing things inside a second-floor unit. Police knocked several times but no one answered. When they identified themselves as law enforcement she (J.P.) complied. She appeared to have been crying and her right eye was swollen and bloodshot. She told police someone hit her but she was reluctant to identify the assailant. On further questioning, J.P. said her former boyfriend, appellant Harper, punched her during an argument in his car a few days earlier.

Harper appeared in the courtyard of the apartment complex while police were questioning J.P. The officer noticed J.P. sob harder and begin shaking when Harper began calling her name from below. She said he had hit her on other occasions and once choked her. They had quarreled over the phone earlier that day because she wanted him to leave her alone. He responded "If I can't have you nobody can have you." J.P. believed Harper was at the door when police first knocked. Despite Harper's earlier threats, she asked police not to hurt him and declined an emergency protective order.

J.P. recanted her account when she testified at Harper's preliminary hearing. She confirmed they had since rekindled their romantic relationship. She explained she "wasn't feeling too good" when police arrived on March 12 because she had recently suffered a seizure and hit her head. This explained the eye injury observed by officers. She denied arguing with Harper over the phone and now claimed she had been speaking to a

2

female friend. J.P. did not remember telling police Harper punched her.

At trial, J.P. again denied Harper injured her and altered other aspects of her testimony. She accused her elderly roommate, Glen Bennett, of punching her in the eye during a drunken argument. She also claimed to be so intoxicated while speaking to Officer Ortega that she could not remember what she said about Harper. Everything that occurred that day was now a "blur." J.P. refused to listen to the audio recordings of her police interview and repeatedly insisted Harper never hit or choked her.

The building manager who called the police, Miguel Hernandez, testified he confronted J.P. about who caused her eye injury because he "wanted to know if it was Glen [Bennett], because that would have been out of character, in my opinion." She told him Harper did. Bennett himself then took the stand and denied ever striking J.P. He recalled her confiding that Harper injured her eye and had "roughhoused" her on prior occasions. Prosecutors elicited expert testimony from a detective about the "cycle of violence" in abusive relationships and the tendency of victims to recant allegations of mistreatment.

DISCUSSION

*A. Prior Acts of Domestic Violence*

Harper contends the trial court erred when it admitted testimony about him hitting and choking J.P. on prior occasions. Such evidence is not ordinarily admissible to show a defendant's disposition to commit the charged acts. (Evid. Code, § 1101.) Evidence Code section 1109 creates an exception to this rule in domestic violence cases. (See *People v. Brown* (2011) 192 Cal.App.4th 1222, 1232-1233.) Trial courts must still determine whether such evidence runs afoul of section 352, i.e., whether the probative value of such evidence "is substantially outweighed by the probability the evidence will consume an undue amount of

3

time or create a substantial danger of undue prejudice, confusing of issues, or misleading the jury." (*Id.* at p. 1233.) We review the ruling below for abuse of discretion, affirming "except upon a showing that it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*Ibid.*, citing *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

The trial court did not abuse its discretion; it reasonably found Harper's past abuse was probative of his propensity to engage in domestic violence. The testimony of Officer Ortega, Hernandez, and Bennett on the subject was no more inflammatory than the testimony they gave about the charged offenses. (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.) Any prejudice to Harper flowed from the "damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638, citing *People v. Yu* (1983) 143 Cal.App.3d 358, 377.) In addition, Officer Ortega's and Bennett's testimony impeached J.P.'s emphatic and unqualified denials on direct and cross-examination that Harper had not acted violently toward her in the past. Any error in admitting evidence of the uncharged prior incidents was harmless under any standard of prejudice. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 541, citing *People v. Watson* (1956) 46 Cal.2d 818, 836, and *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)

*B. Expert Testimony About Domestic Violence*

Harper contends the People's expert, Detective Megan Harrison, was not qualified to testify about the "wheel of control"[2]

---

[2] Testimony that an abuser often "uses psychological, emotional, or verbal abuse to control the victim" is admissible in

and other patterns of abuse in domestic violence cases. He contends her lack of formal training and purported bias in favor of law enforcement precluded her from offering expert testimony. We are not persuaded. Detective Harrison's experience investigating approximately 375 domestic violence cases in Santa Barbara County over the past decade qualifies her as an expert on the subject. (Evid. Code, § 720, subd. (a) [an expert is permitted to rely on background and experience].) Her training and biases go to the weight of her opinion and not admissibility. (See *Brown v. Colm* (1974) 11 Cal. 3d 639, 643 ["if a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes to the weight of his testimony rather than to its admissibility"]; *People v. Barney* (1992) 8 Cal.App.4th 798, 812 [FBI experts' self-interest in testifying about DNA analysis performed at their agency "went to the weight to be attributed to the testimony rather than its admissibility"].) The trial court properly admitted the expert testimony to assist the jury in evaluating the evidence. (*People v. Brown, supra*, 33 Cal.4th at p. 907.)

### C. Motion for Mistrial

Defense counsel moved for a mistrial after a spectator broke into applause and began lauding defense counsel when the court adjourned on a Friday afternoon. Jurors were filing out of the courtroom when the bailiff, then the court, directed the spectator to be quiet and to leave. He continued speaking however, stating the proceedings were "unfair" and that he would "talk to the jurors outside about how evil our system is, that people are innocent." Harper contends the court erred when it denied the motion instead choosing to admonish the jury to

---

this context to assist the jury in assessing the victim's credibility. (*People v. Brown* (2004) 33 Cal.4th 892, 906-907.)

disregard the outburst. (See *People v. Lucero* (1988) 44 Cal.3d 1006, 1022 ["Misconduct on the part of a spectator is a ground for mistrial if the misconduct is of such a character as to prejudice the defendant or influence the verdict"].)

The court was well within its discretion when it denied the motion for mistrial. "'Trials are dynamic processes and not every aspect is predictable or perfectly orchestrated.'" (*People v. Melendez* (2016) 2 Cal. 5th 1, 33.) Disruptions by spectators, though rare, are concomitant with our system of open and transparent criminal proceedings. A trial court exercises broad discretion in deciding whether a particular disruption is prejudicial. (*People v. Lucero, supra,* 44 Cal.3d at p. 1024.) It may deny a motion for mistrial where it is "satisfied that no injustice has resulted or will result from the events of which the complaint ensues." (*People v. Slocum* (1975) 52 Cal.App.3d 867, 884.) Here, the outburst occurred on the record in open court. The judicial officer observed the incident and noted only two jurors were still present. They left before the judge began his colloquy with the spectator. When trial reconvened the next week, it instructed all jurors to disregard the incident and to notify the court if they felt their ability to remain fair and impartial had been compromised. The court emphasized the spectator suffered from mental health issues and lacked any connection with the case's participants.

The spectator's breach of decorum favored neither side. None of the jurors contacted the court about bias or impartiality. The timing and substance of the court's prophylactic instruction, we conclude, mitigated any prejudice the outburst may have caused to either side of the case. (See *People v. Ervine* (2009) 47 Cal.4th 745, 776, citing *People v. Mendoza* (2007) 42 Cal.4th 686, 699 [reviewing courts "presume the jury faithfully followed the [trial] court's limiting instruction"].)

*D. Three-Year Probation Term*

Harper argues Assembly Bill No. 1950, which became effective on January 1, 2021, requires reducing his three-year probation term to two years. (§ 1203.1; *People v. Sims* (2021) 59 Cal.App.5th 943, 958-964.) It does not. The bill's two-year probation limit does not apply to an offense that "includes specific probation lengths within its provisions." (§ 1203.1, sub. (l)(1).) Harper's conviction for inflicting corporal injury on a dating partner required the court to impose probation "consistent with the provisions of Section 1203.097." (§ 273.5, subd. (g).) In turn, section 1203.097, subdivision (a) specifies a minimum probation period of 36 months if the victim of the defendant's abuse is a dating partner or former dating partner. (Family Code, § 6211, subd. (c).) Harper's three-year term falls within this exception to the new law.

DISPOSITION

Judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P.J.

YEGAN, J.

7

Thomas R. Adams, Judge
Superior Court County of Santa Barbara

_____

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.