Filed 5/18/22  Abelar v. Lee CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DEE ANN ABELAR et al., | B310762 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. BC641637 |
| JOUNG H. LEE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge. Affirmed.

Gary Rand & Suzanne E. Rand-Lewis and Suzanne E. Rand-Lewis for Plaintiffs and Appellants.

Wood, Smith, Henning & Berman, Brian L. Hoffman, and Nicholas M. Gedo for Defendant and Respondent.

# INTRODUCTION

This is a medical malpractice and loss of consortium action brought by plaintiffs and appellants Dee Ann Abelar and her husband Brian Abelar (plaintiffs)[1] against, as pertinent here, defendant and respondent Joung H. Lee, M.D.[2] Plaintiffs appeal from a judgment entered after summary judgment in Lee's favor.

Lee is a neurosurgeon who performed a craniotomy on Dee Ann in early October 2015. Approximately six weeks after the surgery, Dee Ann began experiencing neurological symptoms including seizures, and was treated by Lee as well as several other physicians at a local hospital. Eventually, in mid-December 2015, Dee Ann was admitted to USC Keck Medical Center. There, doctors discovered an infection. Plaintiffs contend Lee, among others, negligently failed to diagnose and treat the infection.

Lee moved for summary judgment and supported his motion with a declaration by an expert neurosurgeon who opined that Lee's treatment met the standard of care and did not cause or contribute to the infection. Plaintiffs did not oppose the motion. The court granted the motion for summary judgment because Lee met his initial burden to demonstrate that plaintiffs would be unable to establish that he was negligent and plaintiffs failed to offer any expert medical evidence demonstrating, or

---

[1] Because plaintiffs have the same last name, we refer to Dee Ann Abelar by her first name in describing the facts of the case. No disrespect is intended.

[2] Although Lee is a physician, we refer to him throughout our opinion by his last name only. We reserve the use of the honorific, "Dr. _____," for the medical expert. No disrespect is intended.

even suggesting, Lee failed to meet the standard of care. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

**1.    General Background**

Plaintiffs filed this medical malpractice action against numerous physicians, their associated medical corporations, and several hospitals in December 2016. As pertinent here, the complaint states causes of action for professional negligence and loss of consortium against Lee.[3]

According to the complaint, on October 6, 2015, Lee performed a craniotomy on Dee Ann to remove a meningioma that had been compressing her optic nerve. She was discharged from the hospital two days after the surgery. On November 20, 2015, Dee Ann suffered a grand mal seizure and was briefly admitted to the emergency department at a local hospital. A few days later, Dee Ann sought further medical care from Lee, who did not diagnose an infection. Dee Ann continued to experience seizures and other neurological symptoms and was admitted to a local hospital on November 30, 2015. Dee Ann remained hospitalized until she was transferred to USC Keck Medical Center on December 11, 2015. There, doctors performed a second craniotomy on December 18, 2015, during which portions of Dee Ann's brain and skull were removed. An infection was definitively diagnosed on December 19, 2015.

---

[3] The complaint includes eight causes of action. All but two of those were resolved in favor of Lee pursuant to a successful demurrer by another physician defendant and a stipulation between plaintiffs and the remaining physician defendants.

With respect to the professional negligence claim, plaintiffs contend Dee Ann was suffering from an infection before, during, and after the surgery performed by Lee and that Lee's failure to diagnose and treat the infection fell below the standard of care. Plaintiffs also assert a claim for loss of consortium.

## 2.      Lee's Unopposed Motion for Summary Judgment

Lee filed a motion for summary judgment. With respect to the professional negligence claim, Lee asserted that plaintiffs would be unable to establish that he breached the standard of care or that any action or inaction by Lee caused plaintiffs' alleged injuries. The motion was supported by a declaration by Dr. John Yu, an expert in neurosurgery and in the treatment of brain tumors. Dr. Yu reviewed Dee Ann's medical records and opined that Lee met the standard of care at all times while treating Dee Ann and that no act or omission by Lee caused or contributed to her subsequently-diagnosed infection. Lee also argued that because Dee Ann's negligence claim failed, the loss of consortium claim necessarily failed.

The court granted Lee's motion for summary judgment. Specifically, the court concluded Dr. Yu's declaration established that Lee's care and treatment of Dee Ann met the standard of care and that no act or omission by Lee caused or contributed to the infection. Because plaintiffs failed to offer any evidence of negligence or causation in opposition to Lee's motion, the court concluded that Lee was entitled to summary judgment as to the professional negligence claim as well as the loss of consortium claim.

### 3.    Entry of Judgment and Appeal

The court entered judgment in favor of Lee on February 14, 2020. Plaintiffs timely appeal.

## DISCUSSION

Plaintiffs claim the court erred by granting Lee's motion for summary judgment. We disagree.

### 1.    Scope and Standard of Review

The standard of review is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id*. at p. 850; Code Civ. Proc.,[4] § 437c, subd. (c).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25

---

[4] All undesignated statutory references are to the Code of Civil Procedure.

Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler,* at p. 768.) "In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid.*)

The appellant has the burden to show error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) Further, "an appellant must present argument and authorities on each point to which error is asserted or else the issue is waived." (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867.) Matters not properly raised or that lack adequate legal discussion will be deemed forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.)

## 2. Legal Principles Regarding Professional Negligence

As the party with the ultimate burden at trial, plaintiffs would be required to establish medical negligence by proving "(1) a duty to use such skill, prudence, and diligence as other

members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.)

With respect to the first element, the standard of care for medical professionals requires " ' "that a physician or surgeon have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality and that he [or she] exercise *ordinary care* in applying such learning and skill to the treatment of [the] patient." [Citation.]' " (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 998, final brackets added; see also *Brown v. Colm* (1974) 11 Cal.3d 639, 642–643 [noting "a doctor is required to apply that degree of skill, knowledge and care ordinarily exercised by other members of his profession under similar circumstances"]; *McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 938 [same].) "Proof of this standard is ordinarily provided by another physician, and if a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his [or her] knowledge goes to the weight of [the] testimony rather than to its admissibility." (*Brown*, at p. 643; *In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1249.) Thus, the standard of care can ordinarily be proved only by expert testimony, " 'unless the conduct required by the particular circumstances is within the common knowledge of the layman.' [Citations.]" (*Landeros v. Flood* (1976) 17 Cal.3d 399, 410.)

Proof of causation may also require expert testimony "[w]here the complexity of the causation issue is beyond common experience." (*Garbell v. Conejo Hardwoods*, *Inc.* (2011) 193

Cal.App.4th 1563, 1569; accord, *Webster v. Claremont Yoga* (2018) 26 Cal.App.5th 284, 290.) In a summary judgment proceeding, an expert's opinions may be rejected if they are conclusory, speculative, without foundation, or stated without sufficient certainty. (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155–156 (*Sanchez*).)

### 3. The court properly granted summary judgment in favor of Lee.

#### 3.1. Plaintiffs' Complaint

As noted, we first consider the allegations of plaintiffs' complaint to determine the scope of the issues. Plaintiffs allege that Lee performed surgery on Dee Ann even though her preoperative screening, performed by a different physician, indicated that she had an infection. Plaintiffs also allege Lee, and others, failed to identify and treat the infection after the surgery. Specifically, plaintiffs allege that Dee Ann reported to Lee that she was experiencing decreased vision, double vision, fever, nausea, and vomiting—symptoms consistent with the presence of an infection. Plaintiffs further allege that Dee Ann suffered a grand mal seizure in late November 2015 and subsequently sought further care from Lee, who did not diagnose an infection at that time. In addition, plaintiffs contend Lee failed to visit Dee Ann while she was hospitalized in early December at a local hospital, despite her request that he attend to her there. Brian subsequently met with Lee in his office and, after reviewing

Dee Ann's brain scans, Lee opined that the scans were normal and that she should continue treatment at the local hospital.[5]

Plaintiffs contend that this conduct failed to meet the standard of care and that Lee's negligent conduct caused and contributed to her injuries and Brian's loss of consortium.

### 3.2. Lee's Evidence

As the moving party, Lee had the initial burden to show that plaintiffs' claims have no merit—that is, that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (§ 437c, subd. (o); see *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945 (*Jones*).) "If a defendant's moving papers make a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact." (*Jones*, at p. 945; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 965.)

Lee's motion for summary judgment addressed two elements of plaintiffs' negligence claim: standard of care and causation. As to the standard of care, Lee's expert physician, Dr. Yu, opined that Lee's treatment of Dee Ann met the standard of care. Specifically, Lee properly recommended surgery based on Dee Ann's symptoms and condition, i.e., the presence of a

---

[5] Plaintiffs' complaint alleges that Lee failed to obtain informed consent from Dee Ann prior to the surgery. Because plaintiffs have not addressed that point in their opening brief, they have forfeited the issue. (*Keyes v. Bowen, supra*, 189 Cal.App.4th at pp. 655–656 [noting matters not properly raised or that lack adequate legal discussion will be deemed forfeited].)

4.4-centimeter tumor that was causing visual disturbance. Further, Lee reasonably relied on the preoperative examination conducted by another physician before performing Dee Ann's surgery. That examination showed Dee Ann was medically stable and she was cleared for surgery. Although Dee Ann's white blood cell count was slightly elevated, she showed no symptoms of an infection and therefore no further testing was required prior to surgery. No signs of infection were detected during the surgery on October 6, 2015.

After the surgery, Dee Ann's white blood cell count was further elevated but remained within normal limits. Dr. Yu explained that an elevated white blood cell count after surgery is not generally an indication of an infection, especially in the absence of any other indicators such as abnormal laboratory test results or vital signs. Further, neither the postoperative physical examinations of Dee Ann nor her imaging studies revealed any sign of an infection. On that basis, Dr. Yu opined that Dee Ann was not experiencing an infection when Lee performed the surgery or in the days that followed.

Due to the surgery, Dee Ann was at risk of experiencing seizures and Lee prescribed an anti-seizure medication and a steroid to reduce that risk. Dee Ann saw Lee for a postoperative appointment 10 days after surgery, on October 16, 2015. Her vision symptoms had substantially improved and other findings were normal. Lee asked Dee Ann to return in five weeks for a follow-up appointment.

Dee Ann was admitted to a local hospital's emergency department on November 20, 2015, after suffering an extended seizure. The treating physician noted that Dee Ann had stopped taking the anti-seizure medication Lee prescribed. But she

showed no signs of an infection and her white blood cell count was normal. Dr. Yu noted that the normal white blood cell count provided further evidence that Dee Ann had not been suffering from an infection at the time of her surgery. As expected, her elevated postsurgical white blood cell count had resolved without treatment which would not have occurred if she had an untreated infection, as plaintiffs claimed.

Dee Ann attended a postoperative appointment with Lee on November 24, 2015. Lee noted that Dee Ann had discontinued her anti-seizure medication prior to the seizure on November 20, 2015, but was now taking a different anti-seizure medication. Her imaging reports from the hospital were normal, i.e., showed no sign of infection. Dr. Yu concluded that Dee Ann showed no physical or clinical signs of an infection at that time.

Dee Ann was admitted to the same local hospital on November 30, 2015, after experiencing stroke-like symptoms. Lee conferred with the treating physicians at the hospital and concurred with their diagnosis (Todd's paralysis) and proposed treatment (increased dosage of anti-seizure medication.) Dr. Yu noted that subsequent imaging studies and laboratory tests showed no sign of an infection and no other treating physician documented any concern about an infection prior to December 16, 2015.

On December 18, 2015, Dee Ann underwent a second craniotomy which was performed by a neurosurgeon at USC Keck Medical Center. Cultures taken during the surgery indicated the presence of an infection. Dr. Yu opined, however, to a reasonable degree of medical probability, that Lee conformed to the applicable standard of care for a neurosurgeon and that nothing he did or did not do during the surgery or in his subsequent

11

treatment of Dee Ann caused or contributed to an infection or Dee Ann's alleged injuries.

We agree with the court that Lee provided sufficient evidence to meet his initial burden of production with respect to the standard of care and causation regarding the professional negligence claim. And as we explain, plaintiffs' arguments to the contrary are unavailing.

Plaintiffs' main contention is that Lee failed to produce sufficient evidence to shift the burden of proof to them. For example, plaintiffs claim that Lee's separate statement did not "provide a proper basis for his request for summary judgment, and the Trial Court committed reversible error by allowing the motion to go forward when [Lee] clearly had not provided a competent statement of facts to support adjudication of the issues presented. Moreover, the separate statement was based upon the conclusory [d]eclaration of John Yu, M.D." In a similar vein, plaintiffs suggest that "[t]he separate statement was not supported by competent evidence, but rather, by a self-serving Declaration consisting of hearsay and conclusions of law, which was patently insufficient to satisfy the evidentiary requirements of CCP § 437c, and shift the burden of proof to [plaintiffs]."

In claiming that Lee's motion for summary judgment was not supported by sufficient evidence, plaintiffs make only broad assertions that the evidence was incompetent, without any analysis of the evidence submitted by Lee. As discussed *ante*, however, Lee submitted a detailed declaration by an expert in neurosurgery describing the clinical findings Lee made, his decisions to recommend and perform surgery, and his assessment of postsurgical imaging and laboratory findings. The expert's conclusions that Lee met the standard of care and did not cause

12

or contribute to Dee Ann's infection are well supported.[6] To show that such evidence failed to shift the burden to them, plaintiffs needed to do more than make a bare assertion that the supporting evidence was incompetent. Instead, they were required to demonstrate through reasoned argument and citations to relevant evidence and legal authority *why* the evidence was incompetent. (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799 (*Dietz*) [noting that if an appellant fails to support a claim with reasoned argument and citations to authority we may treat that claim as waived].) Plaintiffs utterly fail to do so.

Plaintiffs also contend the court erred by granting the motion for summary judgment because Lee "failed to show that [plaintiffs] could not establish each element of their prima facie case for Professional Negligence – Medical Malpractice by Physician." But Lee was not required to disprove *each* element of plaintiffs' claim. It was sufficient to demonstrate that plaintiffs would be unable to establish *one* element of their claim. (§ 437c, subds. (o)(1) ["A cause of action has no merit if … [¶] [o]ne or more of the elements of the cause of action cannot be separately established … ."] & (p)(2) ["A defendant or cross-defendant has met his or her burden of showing that a cause of action has no

---

[6] Citing *Kelly v. Trunk* (1998) 66 Cal.App.4th 519, plaintiffs argue that "an expert's bare conclusion is insufficient to support summary judgment, just as it would be insufficient at trial." Indeed, that court stated that "an opinion unsupported by reasons or explanations does not establish the absence of a material fact issue for trial, as required for summary judgment." (*Id.* at p. 524.) This case is inapplicable because Lee's expert disclosed the materials relied upon as well as the factual bases and reasons for his opinions.

merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established … ."].)

Finally, plaintiffs claim that Lee's separate statement violated a rule of court and therefore his motion did not shift the burden to them. We reject this argument because plaintiffs provide no analysis of the facts and cite no applicable legal authority supporting their position. (See *Dietz, supra,* 177 Cal.App.4th at p. 799.)

### 3.3. Plaintiffs failed to oppose the motion for summary judgment.

As noted, plaintiffs did not submit a brief or separate statement in opposition to Lee's motion for summary judgment. Given that Lee satisfied his initial burden, the absence of opposition is fatal to plaintiffs' claims against him.

" 'Whenever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff.' [Citation] ' " 'When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.' " ' [Citation.]" (*Sanchez, supra*, 8 Cal.App.5th at p. 153.) Because Lee satisfied his initial burden and plaintiffs failed to submit any opposing evidence, Lee was entitled to summary judgment as a matter of law.

Undeterred, plaintiffs argue at length that the absence of medical expert testimony supporting their case is immaterial. They urge, citing both the common knowledge doctrine and the

principle of res ipsa loquitur, that medical expert testimony is not required where the circumstances of the injury suggest that the injury was likely the result of a simple negligent act, rather than a course of treatment involving medical judgment beyond the common knowledge of a layperson. We reject this argument because plaintiffs failed to raise it in opposition to Lee's motion for summary judgment. (See, e.g., *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [noting " 'issues not raised in the trial court cannot be raised for the first time on appeal' "].)

Plaintiffs also contend the court should have denied or continued Lee's motion for summary judgment under section 437c, subdivision (h). But plaintiffs did not request a continuance in advance of the hearing and have provided no evidence supporting their contention that a continuance was warranted.

### 3.4. Because the negligence cause of action fails, the loss of consortium claim also fails.

It is well-settled that "an unsuccessful personal injury suit by the physically injured spouse acts as an estoppel that bars the spouse who would claim damages for loss of consortium." (*Meighan v. Shore* (1995) 34 Cal.App.4th 1025, 1034–1035; see also *Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1315–1316; Haning et al., Cal. Practice Guide: Personal Injury, ¶ 3:2413.) Because we conclude plaintiffs' negligence cause of action fails, we must also conclude the cause of action for loss of consortium fails.

### 4. We lack jurisdiction to consider plaintiffs' remaining arguments.

" 'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' " (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.) "If an order is appealable, an aggrieved party must file a timely notice of appeal from the order to obtain appellate review. [Citation.] A notice of appeal from a judgment alone does not encompass other judgments and separately appealable orders … ." (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239 [concluding that notice of appeal mentioning only the underlying judgment did not make it reasonably clear that the appellant also intended to appeal from a separate and directly appealable order granting a new trial].)

Plaintiffs' notice of appeal states the appeal is from a "judgment entered after summary judgment" entered on February 14, 2020. But in their opening brief, plaintiffs also challenge two postjudgment orders of the court. Specifically, plaintiffs argue the court erred by denying their motion to vacate the judgment under section 473, subdivision (b), and by denying their motion to tax Lee's costs. Both these orders are separately appealable. (See *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1394 [noting an order denying a motion under section 473 is regarded as a special order made after final judgment and is appealable]; *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46 ["A postjudgment order which awards or denies costs or attorney's fees is separately appealable. [Citations.] … [a]nd if no appeal is taken from such an order, the appellate court has no jurisdiction to review it. [Citation.]"].)

In order to challenge these two orders on appeal, plaintiffs needed to separately identify them on their notice of appeal (by, for example, providing the dates of the orders and checking the appropriate box on the form) or file separate notices of appeal from those orders. They did neither. As a result, we lack jurisdiction to consider plaintiffs' challenges to these orders.[7]

## DISPOSITION

The judgment is affirmed. Respondent Joung H. Lee shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.

---

[7] We also note that plaintiffs did not appeal from the court's March 9, 2021 amended judgment awarding Lee costs in the amount of $13,935.05.

17